MEISTER et al, *Appellants,*

*v.*

ARDEN-MAYFAIR, INC., *Respondent.*

555 P2d 923

*James L. Sutherland* of Frohnmayer & Deatherage, Medford, argued the cause and filed a brief for appellants.

*Malcolm L. Brand,* Salem, argued the cause for respondent. With him on the brief were George A. Rhoten of Rhoten, Rhoten & Speerstra, Salem, and Harbison, Kellington & Kellington, Medford.

Before Denecke, Chief Justice, and McAllister, Holman, Tongue, Howell, Bryson, and Lent, Justices.

BRYSON, J.

## BRYSON, J.

This is a suit brought by Richard Meister and Patrick Murphy against Arden-Mayfair, Inc., for specific performance of an alleged agreement to sell three retail grocery stores.[1] Plaintiffs appeal from the trial court's determination that no enforceable contract exists between plaintiffs and defendant.

Plaintiffs are experienced grocers and were previously employed by defendant as managers of two of the stores involved in this suit. As such they knew of defendant's corporate structure and that "major policies" were made by management in Los Angeles, California. In February or March of 1974 they learned that the stores were for sale. Plaintiffs, through Mr. Meister, telephoned defendant's Director of Real Estate and Construction, John Tucker, to express interest in acquiring the stores. The testimony concerning the initial phone conversations between Meister and Tucker is in conflict. The evidence shows that Tucker and Meister arrived at a price which Tucker agreed to take to defendant's management for approval. It was arranged that plaintiffs' attorney, Mr. Salter, would be in contact with defendant as to the other conditions of the transaction. Mr. Tucker's notes of phone calls with Meister include the names of plaintiffs, plaintiffs' wives, and Mr. and Mrs. Skillington, as the purchasers of the three stores. On March 15, 1974, plaintiffs' attorney Salter sent Tucker a letter stating that the principals would be Messrs. Meister, Murphy and Skillington. This was further confirmed by Salter's letter of April 4, 1974, to Wadhams & Company regarding financing.

Meister admits that he was aware of Tucker's status at Arden-Mayfair; that he knew that Tucker was obligated to take the proposal to management;

---

[1] Store No. 482, located at 2730 Jacksonville Highway, Medford, Oregon

Store No. 483, located at 545 Stevens Street, Medford, Oregon

Store No. 489, located at 6th and G Streets, Grants Pass, Oregon

[ 519 ]

that Tucker would not be the one to sign the contract; and that Tucker was "the real estate manager."

Following the initial contact, there was no disagreement as to the price to be paid or the identity of the assets to be sold. However, other aspects of the transaction were never resolved. The original purchase agreement,[2] prepared by defendant's attorney David Kassoy and signed by Milton H. Barker, Vice President, General Counsel and Secretary of defendant, was received by plaintiffs on May 5, 1974. It contemplated sale and sublease to a group composed of six individuals: the plaintiffs, their wives, and Mr. William Skillington, a grocery store owner in Klamath Falls, and his wife. The original purchase agreement left open who was to serve as escrow agent and provided for a waiver of the bulk sales law with defendant to indemnify against creditor claims.

Plaintiffs' attorney redrafted the agreement, limiting the purchasing parties to plaintiffs, changing the possession date so as to give plaintiffs possession prior to the closing of escrow, and including a provision designating himself as escrow agent and authorizing himself to pay off defendant's major creditors out of escrow. This redrafted purchase agreement was forwarded to Tucker and received by Tucker's office on May 17, 1974. It was still being reviewed by Mr. Kassoy on May 28, 1974, when defendant's management authorized the termination of negotiations and Mr. Tucker was told that the "deal was off."

Plaintiffs' attorney, Mr. Salter, testified that Tucker agreed to these changes and that Salter understood Tucker had authority to make changes. Tucker testified to the contrary.

The trial court made written findings as follows:
"It is the opinion of this court, and the court therefore

---

[2] Although there were three separate purchase agreements, one for each store, their terms were, with the exception of the purchase price and the date of transfer, essentially identical, and will be treated as one agreement.

finds, that there was an offer to sell the three stores by the defendant corporation and a subsequent counter offer by plaintiffs which was never accepted by the defendant.

"Plaintiffs argue that the changes made in the counter offer were not material changes. Plaintiffs requested the court to view this as an immaterial matter which the court could insert in its decree. The court views this differently and feels that the matters left unresolved were material. There is an inference that when the parties contemplate the execution of a written agreement they do not intend to be bound by earlier oral agreements until the final terms are settled; *Wagner v. Rainier Manufacturing Company,* 230 Or 531 (371 P2d 74) (1962).

"Plaintiffs have argued that John Tucker had the apparent authority to bind defendant corporation. John Tucker was the Director of Real Estate and Construction for defendant corporation and handled the principal negotiations with the attorney for the plaintiffs. Richard Meister, in cross examination, testified that he initially contacted John Tucker about the purchase of the three stores. Mr. Tucker advised him that he would take his proposition to management. The attorney for plaintiffs is bound by his client's knowledge of the limited authority of Mr. Tucker as demonstrated in the initial negotiations.

"* * * * *."

Plaintiffs first contend that the instant transaction is controlled by Article 2 of the UCC as codified in ORS Chapter 72; that the conduct of the parties evidences that they had arrived at an agreement; and that the alterations in the purchase agreement suggested by Salter were offers for additions to the contract under ORS 72.2070. ORS 72.2070 governs the sale of "goods." It provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

[ 521 ]

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) The offer expressly limits acceptance to the terms of the offer;

"(b) They materially alter it; or

"* * * * *.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Uniform Commercial Code."

ORS 72.2040 provides:

"(1) A contract for sale of goods may be made in any manner *sufficient to show agreement,* including conduct by both parties which recognizes the existence of such a contract.

"(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." (Emphasis supplied.)

The term "goods" is defined in ORS 72.1050(1) as follows:

"(1) 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action. * * *.

"* * * * *"

Plaintiffs rely on *Melms v. Mitchell,* 266 Or 208, 512 P2d 1336 (1973), for the proposition that the sale of assets and inventory of a business is governed by the Uniform Commercial Code. *Melms* was an action to rescind a contract for the sale of a cordwood

business. However, the entire contract and the conditions thereof had only to do with "goods." We stated, at page 217, "The written contract is headed 'Sale of Wood Business,' but the entire purchase price is allocated by its terms among the various items of tangible property which are within the statutory definitions of goods. The Code makes no exception for sales of goods which are the assets of a going business."

The facts in the instant case can be distinguished from those in *Melms.* The agreement here disputed involves the sale of both "goods" and "non-goods." The alleged contract as submitted by defendant provided that the markets were operated on leased real property and that the plaintiffs would agree to sublet to the buyer and the buyer agreed to sublet the real property with the permission of the owner. It also covered the assignment by the defendant to the plaintiffs of a sublease of certain premises wherein the defendant was lessor. Some courts have treated such contracts as the one here involved as divisible and have applied the applicable UCC provisions to the sale of the "goods" portion of the transaction. *See Foster v. Colorado Radio Corp.,* 381 F2d 222 (10th Cir 1967). One court has refused to treat a contract under the UCC provisions if it covers both "goods" and "non-goods." *See Field v. Golden Triangle Broad., Inc.,* 451 Pa 410, 305 A2d 689 (1973). There is no precedent for treating a contract as completely under the UCC provisions where it covers both "goods" and "non-goods."

However, there is no need to decide this issue because we find that even if the liberalized offer and acceptance rules of Chapter 72 were applicable, no specifically enforceable contract for the sale of goods would exist under the facts of this suit.

■■ ORS 72.2040 broadens the range of factors available for the court's consideration in determining whether there has been an offer and seasonable acceptance. However, these factors are available only

as evidence to assist the court in determining if the parties actually reached an agreement. They cannot cause a contract to be formed where there has in fact been no meeting of minds between the parties. In the instant case there was no seasonable expression of acceptance. The agreement, redrafted by Salter for plaintiffs, cannot constitute such an acceptance. An offer can be accepted only by the offeree. 1 Corbin on Contracts 235, § 56. Here the redrafted agreement was signed by and purports to bind only Messrs. Meister and Murphy. As noted above, the offer was made to the group composed of Mr. and Mrs. Meister, Mr. and Mrs. Murphy, and Mr. and Mrs. Skillington.

■ Any argument by plaintiffs that defendant agreed to the elimination of the Skillingtons and plaintiffs' wives from the offeree group as purchasers must fail. There is no evidence that anyone other than Tucker considered the discontinuation of their participation, and plaintiffs are bound by Meister's admitted knowledge of the limitations on Tucker's authority. Furthermore, Tucker denies that he agreed to change the agreement to show different parties as purchasers of the stores or that he had the authority to bind defendant to such a change.

If Meister's original communications with Tucker are asserted to constitute the offer and seasonable acceptance is required by ORS 72.2070, plaintiffs' request for specific performance must still fail as no evidence has been offered that all of the buyers to that original agreement are currently ready, willing and able to perform. *See Winters v. Shelton et ux,* 225 Or 104, 109, 357 P2d 284 (1960).

As previously mentioned, the proposed contracts to purchase the stores included terms for the leasing and subleasing of real property for each store location. The contracts each had provisions stating, "This sale shall be conditional upon the consummation of said sublease and the consent by the master lessor [owner] to said subletting and to the assignment by Seller to Buyer of

a sublease of a portion of the demised premises * * *." The proposed lease agreements submitted by defendant included Meister, Murphy, Skillington and their wives as "tenants." The sublease agreements were altered by plaintiffs to show only the plaintiffs as lessees. Other changes were also made to the proposed subleases and were signed only by plaintiffs in the altered form. There is no evidence showing the leasing and subleasing arrangements were ever consummated as proposed by defendant.

Plaintiffs also contend that, assuming the UCC does not apply, all the elements of an enforceable contract were present.

It is clear from the above discussion that if the contract falls outside of ORS Chapter 72, there has likewise been no acceptance as a matter of common law and consequently there can be no contract of sale. In *Wagner v. Rainier Mfg. Co.,* 230 Or 531, 538, 371 P2d 74 (1962), we stated:

> "* * * Before it can be said that a bargain has been made, the acceptance must be 'positive, unconditional, unequivocal and unambiguous and must not change, add to or qualify the terms of the offer.' [Citations omitted.]"

In the comment to section 58, Restatement, 1 Contracts 65, it is stated:

> "An offeror is entitled to know in clear terms whether the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference of assent."

In *Landura Corp. v. Schroeder,* 272 Or 644, 651, 539 P2d 150 (1975), we quoted with approval from *Smith v. Vehrs,* 194 Or 492, 499, 242 P2d 586 (1952) as follows:

> " 'It is a well-established rule of law in this state that equity will not decree specific performance unless the contract is definite, certain and complete. The court cannot make a contract for the parties, nor can it make clear that which is left in doubt and uncertainty. [Citing cases]'."

We conclude that defendant's proposed agreement to sell of May 1, 1974, constituted an offer of sale but it

was not accepted by the plaintiffs. Material differences existed between the parties. Under these circumstances the defendant retracted the offer to sell, which it had a right to do.

Affirmed.