Argued and submitted January 14, affirmed April 7, 1980

## MUSIC TREE, INC.,
### *Appellant,*
#### *v.*
## TALLMAN PIANO STORE, INC.,
### *Respondent.*

## (No. 79-554-L, CA   15427)
#### 608 P2d 1228

Robert H. Grant, Medford, argued the cause for appellant. With him on the brief was Grant, Ferguson & Carter, Medford.

Robert G. Hunter, Medford, argued the cause for respondent. With him on the brief was John E. Ferris, Prof. Corp., Medford.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Plaintiff brought this forcible entry and detainer action (ORS 105.105-105.160) to recover possession of commercial premises. The court entered its judgment order with findings of fact and conclusions of law and entered judgment in favor of defendant. Plaintiff appeals. The statement of facts that follows is a restatement of the trial court's findings.

On May 1, 1976, defendant (Tallman) leased retail space from Jack Stong (Stong) as owner. On July 1, plaintiff (Music Tree) leased adjacent premises in the same building from Olive Stong as owner. At the same time, Stong assigned his lessor's interest in the Tallman lease to Music Tree. Tallman was not given notice of the assignment until February 2, 1977, when Music Tree sent a letter informing it of the assignment and indicating that all future rent checks should be sent directly to Music Tree and not to Stong. (It is disputed whether a copy of the assignment was also forwarded to Tallman; the court made no finding on the issue.)

From the beginning of the lease, Tallman had paid Stong $650 monthly rent. Even after July 1, 1976, when Music Tree acquired by assignment the lessor's interest in the Tallman lease, that arrangement did not change. Stong continued to accept the lease payments from Tallman. He credited that amount toward the $1,000 monthly rent owed by Music Tree for the entire building under its agreement with Olive Stong.

After receipt of the February, 1977, letter, Tallman contacted Stong concerning the assignment. He recommended that the practice of making rent payments directly to him continue. Tallman then wrote Music Tree denying the validity of the assignment and stating that it would continue to pay rent to Stong. Music Tree did not formally respond. Through all of 1977 and 1978 Tallman continued to treat Stong as its lessor; he accepted the rent payments from Tallman and credited Music Tree's account monthly.

Tallman's lease expired the last day of April, 1979.[1] The lease provided that Tallman had the right to renew for an additional two years "at the expiration" of the lease. On April 29, 1979, Tallman notified Stong that it elected to exercise its option to renew. Stong relayed that notice to Music Tree on May 1, 1979; however, on the same day Music Tree sent a written notice to Tallman to vacate and quit the premises in 30 days, stating that the lease renewal had not been properly exercised.

In addition to the foregoing, we note that the record shows that, after several communications between the parties, Tallman paid the May and June rental payments to Stong as usual. Music Tree refused to accept any rent or any credit for its account, claiming that the lease had terminated. Music Tree returned the payments to Tallman and brought this FED action.

We conclude that the findings of fact are well supported by the evidence, and plaintiff does not seriously challenge them. Plaintiff does contend that certain of the court's conclusions of law do not follow from the facts.

Plaintiff first challenges the court's conclusion that Stong was an agent of Music Tree for purpose of accepting the rent from Tallman.[2] From the beginning of the Music Tree lease on July 1, 1976, through April 30, 1979, the date of termination, Stong accepted the

[1] The findings said "May," but that was a typographical error.

[2] The court concluded:

"II. Jack Stong became the agent of the Music Tree for purposes of transactions involving the lessor, lessee relationship between the Music Tree and Tallman Piano Store by implication or by estoppel.

"* * * * *

"V. The conduct of the Music Tree in allowing the lease payments to be made to Mr. Stong without protest during a period of approximately fourteen months, was such as to imply the appointing of Jack Stong as agent for such purposes. After allowing Tallman Piano Store to deal with Jack Stong on such an important matter as the payment of rent, the Music Tree is estopped to deny his capacity as agent for purpose of receiving the notice of renewal."

lease payments of $650 per month, purporting to act on behalf of the Music Tree, and credited Music Tree's account to reflect the payments. During that period of almost two and one-half years Music Tree acquiesed in the arrangement with full knowledge. The evidence of the circumstances and the course of dealing between the parties supports the court's conclusion that Stong was acting as an agent for Music Tree, at least for the collection of rent.

Music Tree also contends that the court's conclusion that Tallman effectively renewed the lease at its expiration was erroneous. The court concluded:

"VI. Tallman Piano Store effectively renewed the lease by giving notice to Jack Stong on April 29, which he relayed to the Music Tree representative on May 1.

"VII. The renewal of the lease delivered to the Music Tree, Inc. was an effective renewal notwithstanding the question of Mr. Stong's agency. The lease provision relating to renewal provides that 'at the expiration of the lease, the lessee shall have the right to extend lease for two additional years ***' The terminology of the lease does not require notice of renewal prior to the expiration but only upon the expiration. By the face it expired 'at midnight on the 30th day of April, 1979.' Renewal notice the following day would appear to be notice for renewal at the expiration of the lease."

The terms of the lease did not require notice prior to the expiration. Notice was required "at" the expiration. In the absence of a specific time fixed by the terms of the lease within which the tenant must exercise the right to renew, the law implies a reasonable time to exercise the option within the term of the lease. *Taylor et ux v. Wells et ux,* 188 Or 648, 217 P2d 236 (1950). The court here concluded that renewal on the day following the midnight expiration was reasonable. If conclusion VII stood by itself, we might entertain some doubt whether the attempted renewal was effective because it was delivered to Music Tree *after* the expiration of the term. However, the court also

[655]

concluded that Tallman's notice *to Stong* was itself effective by reason of his agency. We are persuaded that Music Tree's continued acquiesence in Tallman's course of dealing only with Stong in regard to the lease extended the scope of his agency to encompass the effective receipt of the notice of renewal.[3] It was entirely reasonable for Tallman to believe that Stong's authority encompassed acceptance of the notice. *Cascade Warehouse v. Dyer,* 256 Or 377, 381, 471 P2d 775, 474 P2d 325 (1970).

Finally, Music Tree claims that the court erred in failing to find that Tallman was in default in its rent payments for May and June, 1979. The evidence is to the contrary. It shows that Tallman paid the rent to Stong for those months in timely fashion, but that the payments were returned to Tallman by counsel for either Stong or Music Tree. The court did not err in finding that Tallman had paid the rent each month on time.

Affirmed.

---

[3] The first and last month rent had been paid at the inception of the lease. On April 1, Tallman paid Stong $650, which Stong apparently applied to May, the month after the expiration of the original term, and credited to Music Tree's account.