Argued and submitted April 13, reversed and remanded with instructions September 14, reconsideration denied October 20, petition for review denied November 17, 1981

BLAKESLEE et al,
*Respondents,*

*v.*

DAVOUDI et al,
*Appellants,*

*v.*

OLSON,
*Respondent.*

(A 8002-00850) CA 17783)

633 P2d 857

James F. O'Rourke, Jr., Portland, argued the cause for appellants. With him on the briefs were John S. Marandas and Bloom, Ruben, Marandas & Sly, Portland.

John S. Cavanagh, Portland, argued the cause for for respondents. With him on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendants appeal from a judgment granting plaintiff-lessees specific performance of an option to renew a commercial lease which provided for arbitration of the rental if the option is exercised but the parties are unable to agree on the rent to be paid. Defendants present four contentions on appeal, but because we conclude on *de novo* review that plaintiffs did not exercise the option to renew the lease, we need not consider the other questions.

In 1974, plaintiffs and third-party defendant (then the spouse of plaintiff Blakeslee) acquired by assignment a leasehold interest in a tavern located in North Portland. In the written consent to that assignment, given by defendants' predecessors, two options for renewal of the lease were granted to lessees as follows:

"IN ADDITION, we, THE UNDERSIGNED, hereby grant to the above lessees, MICHAEL G. BLAKESLEE, BRITTA L. BLAKESLEE, and DOUGLAS J. POLK, an option to renew the within described lease for an additional five years, from the first day of JUNE, 1974, to and including the 31st day of MAY, 1979. The monthly rental for the first two years of said lease is to be TWO HUNDRED TWENTY FIVE AND NO/100 DOLLARS ($225.00) per month, with the monthly rental for the last three years of said lease to be agreed upon between the lessors and the lessees. In the event they are unable to agree as to the amount of monthly rental for the last three years of said lease, the lessors shall appoint one arbitrator, the lessees shall appoint one arbitrator, and the two arbitrators so appointed shall appoint a third arbitrator and the decision of the majority shall be binding upon both the lessors and the lessees.

"IN ADDITION to the option to renew said lease as hereinabove set forth, the lessors grant to the lessees the first option to renew this lease for an additional five years from the 31st day of MAY, 1979, at a rental to be agreed upon at the time of exercising said option. In the event the lessors and lessees cannot agree as to the amount of the monthly rental to be paid, then same shall be submitted to arbitration, as hereinabove set forth."

In 1976, the lessees and defendants' predecessors entered into a new lease agreement for what would have been the remainder of the lease term which was to expire

on May 31, 1979. At the lessees' request, the new lease contained a reference to the second option to renew which had been given in 1974. Although it is disputed, we assume that there was an implicit understanding that the terms of the option, including the rent arbitration provision as well as the term (June 1, 1979 to May 31, 1984), remained the same.[1] Sometime prior to the end of June, 1978, third-party defendant transferred one-half of her one-third interest in the leasehold to her former husband and one half to plaintiff Polk. In June, 1978, lessors sold the tavern property to defendant Davoudi, with whom defendant Lazarides became a co-owner at some later time.

In January or February, 1979, plaintiffs and defendants began negotiating a new lease. Plaintiffs stated initially that they were willing to continue as lessees only if defendants financed improvements to the premises. Defendants showed no interest in doing so. The parties could not reach agreement about the rent. Plaintiffs were willing to pay more rent if they were given a lease term extending beyond the five years included in the option to renew, but defendants refused. Plaintiffs repeatedly made that request, but "always" met with refusal. Plaintiffs were concerned that the parties "come to an understanding of what the terms of the lease might be" and admitted at trial that the issues of a longer term and higher rent were "intertwined."

Plaintiffs' evidence was that at a meeting in late March, 1979, when it became clear that the parties could not agree on the rent, the plaintiff who attended that meeting stated there was no other alternative but to go to arbitration, that defendants said "Fine," and that at his request defendant Davoudi agreed to appoint an arbitrator. Plaintiffs then waited for some word from defendants. They attempted unsuccessfully to reach defendants by phone in the interim. Plaintiffs continued to pay rent in April and May. On June 1, 1979, plaintiffs increased the amount of their rent check by $25, and mailed it to defendants with the following note written by one of the plaintiffs:

[1] Defendants contend there was no such option, but for the purposes of this opinion we accept plaintiffs' contention that the option referred to was the earlier one which included the arbitration provision.

"Since I haven't received a lease proposal from you, and we haven't had the opportunity to discuss it in person, I thought this was the right amount to send at this time."

At trial, that plaintiff first suggested that he considered the note and check to be an exercise of plaintiffs' option to renew, but he then admitted that he had been in a "quandary" about what to do; he said plaintiffs had been trying to exercise their options but had failed to arrive at terms for doing so. The other plaintiff explained that since they had heard nothing about an arbitrator, he thought perhaps defendants had given up their demand for a higher rental rate and might be willing to accept the additional $25; in that way, plaintiffs might avoid the expense of arbitration. He testified that he considered the matter was "certainly" still in the negotiating stage. However, on June 1, 1979, prior to defendants' receipt of plaintiffs' letter and check, defendants' counsel notified plaintiffs by letter that they had failed to exercise the option and that the tenancy would continue on a month-to-month basis.

■■ The exercise of an option to renew a lease must, absent unusual circumstances, occur prior to the expiration of the lease. *See Taylor et ux. v. Wells et ux.,* 188 Or 648, 656, 217 P2d 236 (1950); *Music Tree, Inc. v. Tallman Piano,* 45 Or App 651, 655, 608 P2d 1228 (1980). Moreover, the optionee must unconditionally manifest a determination to exercise the option. *Larson v. Trachsel,* 282 Or 247, 251, 577 P2d 928 (1978). In *Larson,* the optionee testified that he had "unequivocally" exercised the option by giving oral notice that plaintiffs were exercising their option. In *Killam v. Tenney,* 229 Or 134, 150, 366 P2d 739 (1961), the Supreme Court held that when the option itself does not limit the way in which notice of its exercise is to be conveyed, "anything that amounts to a manifestation of the optionee's determination to accept is sufficient." In *Killam,* notice was given by a letter in writing. The court said:

"* * * Upon the *seasonable unqualified* acceptance of the offer there would emerge a valid bilateral contract which the courts will specifically enforce. * * *" (Emphasis supplied.)

■■ Under the "objective" theory of contracts largely adopted in Oregon, *see Kabil Developments Corp v. Mignot,* 279 Or 151, 154-57, 566 P2d 505 (1977), the relevant

inquiry is not into the parties' "undisclosed intents and ideas," but into their "communications and overt acts." 279 Or at 157. According to the Restatement of Contracts (1932), which incorporates the objective theory of contracts, the manifestation of assent to an offer may be made "wholly or partly by written or spoken words or by other acts or conduct" (section 21), but acceptance must be "unequivocal." Section 58. In *Meister v. Arden-Mayfair, Inc.,* 276 Or 517, 525, 555 P2d 923 (1976), the following Comment to section 58 of the Restatement is quoted with tacit approval:

> "An offeror is entitled to know in clear terms whether the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference of assent."

Finally, the Supreme Court has held that acceptance of an offer must be "positive, unconditional, unequivocal and unambiguous, and must not change, add to, or qualify the terms of the offer." *Wagner v. Rainier Mfg. Co.,* 230 Or 531, 538, 371 P2d 74 (1962). The same thing is true with respect to an option, which is a continuing offer: both parties are entitled to know whether or not they have a contract. Here, an unequivocal exercise of the option would have bound both the lessors and the lessees to the terms of the underlying lease for the renewed term for whatever a majority of the arbitrators determined to be reasonable rent. Once the option was exercised, neither party could back out unilaterally because of a disagreement with the arbitrators' award.

■ It is implicit in the trial court's findings of fact that the trial judge found plaintiffs and their witnesses more credible than defendants. We agree that defendants' version of events is less plausible than that of plaintiffs. However, even accepting plaintiffs' version of the negotiations that took place in the spring of 1979, we conclude that plaintiffs did not by words or conduct effectively exercise their option to renew the lease on the extant terms, subject only to an adjustment of rent to be determined by arbitration. Plaintiffs admit that they never actually told defendants that they were exercising the option; they testified instead "there was no question of our *wanting* to exercise our option." (Emphasis supplied.) At least in the early part of the discussions, plaintiffs appeared to condition renewal

of the lease upon the defendants' undertaking, at their expense, to expand and improve the tavern premises.

Although plaintiffs claim that after defendants showed no interest in making improvements, the focus shifted to discussions centering around rent, there was no testimony indicating that plaintiffs then informed defendants they wanted to renew despite the lack of agreement about improvements. Furthermore, it appears that throughout this entire period plaintiffs were pressing for an extended lease term in exchange for a higher rental, but defendants always refused the longer term. Again, there appears to have been no communication to defendants that plaintiffs wished to renew despite defendants' refusals. The proposals by plaintiffs to alter the lease terms, apart from the rental rate, amounted to counteroffers not accepted by defendants. A counteroffer is generally viewed as a rejection of an offer. *See Small v. Paulson,* 187 Or 76, 85, 209 P2d 779 (1949). Although plaintiffs retained their option during the term of the lease despite defendants' rejection of their alternate proposals, it was nonetheless requisite that plaintiffs unequivocally state their intention to exercise the option to renew on the terms of the original lease, subject only to the rental to be determined by arbitration.

Plaintiffs contend that defendants' agreement to select an arbitrator necessarily implies effective exercise of the option to renew. Our review of the record, however, leads us to conclude that the situation at that time was highly equivocal and that plaintiffs themselves did not consider that they had a renewed lease. Although plaintiffs' attempted initiation of arbitration might conceivably raise an inference that the option was being exercised, that is not enough. *Meister v. Arden-Mayfair, supra.* Plaintiffs themselves took no affirmative action regarding arbitration. After the expiration of the lease term, but apparently before receiving any communication from defendants, plaintiffs sent the June rent check along with a letter which referred to their failure to receive a "lease proposal" from defendants. We construe that reference to mean that plaintiffs still considered some of the matters which were the subject of the earlier negotiations to be open. We deem it significant that the letter did not mention arbitration. Indeed, plaintiffs testified that the matter of arbitration

was still negotiable. We think it likely that plaintiffs' earlier mention of arbitration was used as a tool in the negotiation process aimed at a new lease.

We conclude that there was not here an unequivocal manifestation of plaintiffs' exercise of the option to renew the lease. Accordingly, we reverse and remand for the entry of a decree not inconsistent with this opinion.

Reversed and remanded with instructions.