**VIRGIN ISLANDS TAXI ASSOCIATION, Plaintiff**

**v.**

**VIRGIN ISLANDS PORT AUTHORITY, FREDDY LETTSOME, EAST END TAXI SERVICES, INC., THE RITZ-CARLTON VIRGIN ISLANDS, INC., AND CANEEL BAY RESORT, Defendants**

Civil No. ST-97-CV-117

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 1, 2013

LEE J. ROHN, ESQ., TERRI GRIFFITHS, ESQ., Christiansted, St. Croix, USVI, *Attorneys for Plaintiff Virgin Islands Taxi Association, Rohn & Associates*.

GREGORY H. HODGES, ESQ., Dudley, Topper & Feuerzeig, St. Thomas, USVI, *Attorney for Defendant Ritz-Carlton Virgin Islands, Inc.*

MARK D. HODGE, ESQ., Hodge & Francois, St. Thomas, USVI, *Attorney for Defendants East End Taxi Services, Inc. and Freddy Lettsome.*

HENRY V. CARR, III, ESQ., St. Thomas, USVI, *Attorney for Defendant Virgin Islands Port Authority.*

KYLE R. WALDNER, ESQ., Smock & Moorhead, St. Thomas, USVI, *Attorney for Defendant Caneel Bay Resort.*

CARROLL, *Judge*

## MEMORANDUM OPINION

### (August 1, 2013)

**THIS MATTER** came before the Court on March 21, 2013 for a hearing on Plaintiff Virgin Islands Taxi Association's Amended Motion for Partial Summary Judgment and the Defendants' partial summary judgment Motions.[1] On January 1, 1987, the Legislature of the Virgin Islands passed Act No. 5231 granting the Virgin Islands Taxi Association "the exclusive right to provide public taxi-cab service from the terminal facility" at the Cyril E. King Airport through. This exclusive right, along with other obligations, was to last for ten years with an option for VITA to renew it for an additional ten years. VITA argues that, as a matter of law, the facts on the record show that its franchise agreement was properly renewed. The Defendants contend that, based on the same uncontested facts, VITA failed to renew the franchise agreement as a matter of law. Being duly satisfied that the franchise agreement was properly renewed, the Court will deny the Defendants' Motions and grant VITA's Motion for Partial Summary Judgment.

## FACTS

The facts of this case have been recited in detail in *East End Taxi Association v. Virgin Islands Taxi Association.*[2] As such, this Court will limit the discussion to those undisputed facts relevant to the issue of the franchise renewal raised in the present motions.

Act 5231 granted the Virgin Islands Taxi Association the exclusive right to provide taxi service from the Cyril E. King Airport. This exclusive right, along with other obligations, was to last for ten years with an option

---

[1] Terri Griffiths, Esq. and Lee Rohn, Esq., represent Plaintiff Virgin Islands Taxi Association. Henry Carr, Esq., represents Defendant Virgin Islands Port Authority. Gregory Hodges, Esq., represents Defendant Ritz-Carlton Virgin Islands, Inc. Kyle Waldner, Esq., represents Defendant Caneel Bay Resort. Mark Hodge, Esq., represents Defendants East End Taxi Services, Inc. and Freddy Lettsome.

[2] 49 V.I. 658 (D.V.I. App. Div. 2008).

for VITA to renew it for an additional ten years. The first ten years of the exclusive franchise expired on April 30, 1997.

The initial franchise fee was subject to renegotiation every four years, and would be increased no less than the amount necessary in keeping with the consumer price index. For the initial ten-year period, the fee was increased only in keeping with the consumer price index. The Act requires VITA to maintain public liability insurance in an amount not less than $1,000,000, with VIPA named as a loss payee, for any one accident. The Act also requires VITA to have a minimum number of licensed taxicabs at the airport. No terms of the franchise/concession agreement, other than fees, were subject to negotiation because all other terms and conditions were set out in the Act.

As the Rule 30(b)(6) designee for Defendant Virgin Islands Port Authority, Director of Property Management Denise Mills testified that she had worked for VIPA for twenty-four years and that she had collected monthly rents from VITA. Since 1988, VIPA has sent VITA monthly invoices that have referenced "monthly rental" and "taxi concession fees." VIPA continues to invoice VITA.

Before the expiration of the first ten-year period, Rhys S. Hodge, Esq.,[3] sent a letter to VIPA dated February 13, 1995. The letter stated:

> Please accept this as official notice by the Virgin Islands Taxi Association, of its intent and desire to renew the duration term of the Taxi Franchise at the Cyril E. King Airport. Please contact [VITA's attorney] or the President of the Association to negotiate franchise fees for the renewal term, and to accomplish all necessary paper work to effectuate and evidence the extension of the franchise . . . .

In response to the letter, VIPA set up a meeting the following month attended by Gordon Finch, Executive Director; Ken Hobson, Property Manager; Don Mills, legal counsel; and Attorney Hodge. Finch, Hobson, and Attorney Mills told Denise Mills that they did not recall what happened at the meeting.

_____

[3] Then Attorney Rhys S. Hodge is now the Chief Justice of the Supreme Court of the United States Virgin Islands.

On February 12, 1997, VITA commenced an action in this Court for declaratory and injunctive relief against Defendants East End Taxi Services, Inc., VIPA, Caneel Bay Resort, and Ritz Carlton Virgin Islands, Inc. VITA contended that VIPA violated the franchise agreement by facilitating East End, Caneel, the Ritz and others in picking up passengers from the airport. On March 10, 1997, the Territorial Court granted VITA's motion for preliminary injunction and declared Act 5231 constitutional over the Defendants' challenges.

On May 12, 2004, VITA moved the Superior Court to compel VIPA to show cause why it should not be held in contempt for violating the terms of the preliminary injunction. After a hearing, the Court entered an order on August 3, 2005 holding VIPA in contempt. The Order directed VIPA, East End, Caneel, and the Ritz to cease and desist from operating in a manner contrary to the statutory requirements of Act 5231 (the franchise agreement).

On February 6, 2006, VITA moved the Superior Court for a temporary restraining order and moved to compel East End, VIPA, Caneel, and the Ritz to show cause why they should not be held in contempt of Court for violating the March 10, 1997 preliminary injunction and the August 3, 2005 Order. The Court denied the temporary restraining order, and on June 13, 2006 found East End, VIPA, Caneel, and the Ritz to be in contempt of court for violating the August 3, 2005 Order, imposed monetary sanctions for contempt, and kept the preliminary injunction in full effect.

VITA again moved the Court for an order to show cause for violating the preliminary injunction. On September 7, 2006, after a hearing where the Superior Court reserved decision on the issue of new findings of contempt, the Court ordered East End, VIPA, Caneel, and the Ritz to each pay $105,000 to the Court as payment for the fines in the June 13, 2006 Order. The Ritz timely appealed the September 7, 2006 oral Orders denying its Motion for Reconsideration and directing payment of the fines levied in the June 13, 2006 Order.

The issues before the District Court of the Virgin Islands, Appellate Division, were "whether VITA properly renewed its franchise under Act 5231; (2) whether the contempt sanctions imposed by the June 13, 2006 Order, and the September 7, 2006 oral Order were civil or criminal in

nature; and (3) whether the evidence adduced at the show cause hearings was sufficient to support the findings of contempt and sanctions imposed against the appellants."[4]

During this appeal, VIPA, East End, Caneel, and the Ritz argued for the first time that VITA failed to renew its exclusive franchise created by Act 5231. The District Court Appellate Division made several findings before remanding the matter to the Superior Court. The Appellate Division explained that "the evidence in the record is insufficient to support the existence of a valid renewal of the franchise granted in Act 5231 . . . . It is, therefore, incumbent upon the Superior Court to address the issue of franchise renewal as a threshold matter upon remand."[5]

The Appellate Division explained that "[w]hether VITA renewed the franchise granted in Act 5231 depends on whether a valid contract for the renewal of such franchise existed."[6] Finding no evidence of mutual assent to a renewal contract, the court considered the February 13, 1995 letter as evidence of merely an agreement to agree because the letter did not contain any terms of the franchise agreement.[7] The Appellate Division then remanded the case to this Court for further proceedings consistent with the memorandum opinion and judgment.

## LEGAL STANDARD

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[8] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[9] A fact is material only if its existence or non-existence will

---

[4] *East End Taxi*, 49 V.I. at 671.

[5] *Id.* at 682.

[6] *Id.* at 680.

[7] *Id.* at 681.

[8] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Skopbank v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 39 V.I. 220, 227 (D.V.I. 1998).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

affect the outcome of a lawsuit under applicable law, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[10] The role of the court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of fact remains in dispute.[11] The non-moving party receives "the benefit of all reasonable doubts and inferences drawn from the underlying facts."[12]

"When reviewing the record, [the] Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and [the Court] must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' "[13] "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."[14] The non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial.[15] Such evidence may be direct or circumstantial, but "the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way."[16] Importantly, the Court may not weigh the evidence and determine the truth, but instead decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party.[17]

▮ At the hearing on March 21, 2013, all parties agreed that there are no genuine issues of material fact as to whether the franchise was properly renewed. Although the parties believe there are no genuine

---

[10] *Id.*

[11] *Suid v. Phoenix Fire & Marine Ins. Co., Ltd.*, 26 V.I. 223, 225 (D.V.I. 1991).

[12] *Aristide v. United Dominion Constructors, Inc.*, 30 V.I. 224, 226 (D.V.I. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[13] *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 664 (2011) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (2008)).

[14] *Id.* (internal quotation marks omitted).

[15] *Anderson*, 477 U.S. at 248.

[16] *Saldana v. Kmart Corp.*, 260 F.3d 228, 232-34, 43 V.I. 361 (3d Cir. 2001).

[17] *See Anderson*, 477 U.S. at 255.

issues of material fact, this Court may not simply accept that assertion.[18] However, after independently examining the issue, the Court agrees that there are no genuine issues of material fact. Therefore, judgment as a matter of law is proper. The Court must now decide whether the franchise agreement was properly renewed.

## DISCUSSION

### I. The Appellate Division's remand was a "case" remand, and this Court is not bound by the Appellate Division's statements relating to the validity of the renewal of the franchise agreement.

As a threshold issue, this Court must determine what, exactly, the Appellate Division tasked it with deciding. To answer this inquiry, the Court must determine whether the remand was a case remand or a record remand.

■ In a record remand, the appellate court retains jurisdiction over the case, but the record is returned to the trial court. "[T]he trial court may be directed to clarify or amplify some portion of the record, to make additional findings, to hear further testimony, or to explain a ruling."[19] Such a remand allows the trial judge to complete or clarify the record so the appellate court has an adequate basis for review of the trial court's rulings. "The trial court does not, however, have the authority to amend the ruling that is on appeal . . . ."[20] In other words, this Court would not be able to make any legal determinations.

■ On the other hand, a case remand returns the case to the trial court for all purposes; the appeal is terminated, and the appellate court retains no jurisdiction. "If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in [the appellate] court, is to file a new notice of appeal, once a final order or

---

[18] *Matthew v. Herman*, 56 V.I. 674, 682 (2012) (repeating the consistent holding that parties may not stipulate to the law).

[19] *Hodge v. McGowan*, 50 V.I. 296, 305 n.4 (2008) (quoting *Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996) (internal footnotes and citations omitted)).

[20] *Id.*

judgment is entered."[21] Any such appeal is new and distinct from the previous appeal that was terminated after the case remand.[22]

In this case, the Appellate Division's remand is necessarily a case remand. Prior to the appeal, the parties had not briefed the issue of the franchise renewal for appeal, and the factual record on that issue had yet to be fully developed. The Appellate Division returned the case to this Court for all purposes, and it is apparent that the Appellate Division has given up jurisdiction of the case.[23]

Although the record in this matter did require clarification, the specific remand order given to this Court states that the matter, and not just the record, is remanded for proceedings consistent with the Appellate Division's memorandum opinion. Having determined that the Appellate Division issued a case remand, this Court must next determine to what extent it is bound by the Appellate Division's view of the evidence on the record.

The Defendants argue that the Appellate Division's expressions of doubt as to renewal and finding of insufficient evidence to prove renewal binds this Court to find the same. However, to accept this argument presents a question as to why the Court should address the issue of franchise renewal as a threshold matter upon remand when the Appellate Division would have already found that there was insufficient evidence in the record to support the existence of a renewal.

The only way to reconcile these two seemingly contradictory approaches is to understand the Appellate Division's discussion of the law of contract formation as persuasive dicta, and to assume that if VITA can produce additional evidence of franchise renewal it will not be foreclosed from doing so. The Court must, therefore, find that, although expressing a strong opinion, the Appellate Division intended for this Court to make an independent determination on the issue of the franchise renewal. This determination must be based on the complete factual record developed after the appeal and this Court's de novo interpretation of Virgin Islands law as applied to the facts.

---

[21] *Id.*

[22] *Hypolite v. People*, 51 V.I. 97, 101 (2009).

[23] Accordingly, appellate jurisdiction for future appeals in this matter lies with the Virgin Islands Supreme Court.

## II. The Franchise Agreement and Act 5231 created a contract that VITA had the option to extend.

In analyzing the record, the Appellate Division found that the record was insufficient to prove the franchise was properly renewed. In the Appellate Division's brief discussion of the subject, it focused on the elements of contract formation. The Appellate Division did not discuss the contract as an option contract, but, instead, briefly analyzed the renewal in terms of creation of a new contract requiring mutual assent, offer, and acceptance. It seems clear to this Court that the Appellate Division's cursory treatment of the subject was meant to provide only initial impressions for this Court before the Appellate Division tackled the contempt order — the issue actually on appeal.

This Court agrees that VITA's exclusive franchise agreement is a contract subject to the same contract interpretation principles as contracts between private parties. In this case, Act 5231 clearly states that VITA has the option to renew the franchise agreement for an additional ten-year period. However, the use of the word "option" does not always create a bona fide option contract. Therefore, the renewal of the franchise agreement must be analyzed under the law of option contracts to determine first, whether there was a valid option contract, and second, whether the option was properly exercised.

Act 5231 states: "This franchise shall commence upon the first day of the month following the acceptance of this franchise and shall continue for a period of ten years or until terminated by the Authority as provided in this [A]ct; provided, however, the franchisee shall have the option to renew the franchise for an additional ten-year period subject to the provisions of this [A]ct."[24]

▉ ▉ Pursuant to Virgin Islands Code title 1, section 4, the Restatements of the Law are the law of the Virgin Islands in the absence of local laws to the contrary.[25] The Restatement (Second) of Contracts explains that "[a]n option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer."[26] The agreement at issue in this case is a

---

[24] 1986 V.I. SESS. LAWS 5231(f).

[25] V.I. CODE ANN. tit. 1, § 4 (1995).

[26] RESTATEMENT (SECOND) OF CONTRACTS § 25 (1981).

franchise agreement, but the treatment of options in the context of lease contracts is informative. "Generally, when an option is incorporated into a lease, it is done for the benefit of the lessee to guarantee the right to possession beyond the lease term, if desired."[27]

It is important to note that the requirements for the formation of a contract here refer to the original contract. In this case, the validity of the franchise agreement embodied in Act 5231, the original contract into which an option to renew was incorporated, is uncontested. An analysis of offer, acceptance, and mutual assent is unnecessary because these elements were already present to form the initial contract.

█ After a more thorough examination of the facts of the case and the law, this Court finds that the Act is clear that the renewal is at VITA's option. The plain language of Act 5231, subsection (f) limits VIPA's ability to terminate the contract by making the offer to renew irrevocable. Therefore, the option for VITA to renew was at VITA's sole discretion. Therefore, a valid option contract was created.

## III. The February 13, 1995 letter on behalf of VITA was legally sufficient to exercise VITA's option to renew the franchise for a second 10-year term because the letter complied with common law renewal requirements and Act 5231.

After reviewing the evidence on VIPA's conduct in the years following the February 13, 1995 letter, it is apparent that both VIPA and VITA accepted that the franchise was binding and enforceable during the renewal period. The ability to reject an extension of the original franchise agreement was beyond VIPA's control. Attorney Hodge's letter indicating VITA's "intent" and "desire" to extend the contract term was sufficient to renew the franchise agreement for the second ten-year period because it was unequivocal and accepted Act 5231 as containing all material terms.

### A. No additional documents were necessary to renew the franchise agreement.

█ It is well established common law that the language of the option provision determines the form and manner in which an option may be

---

[27] *Mountaintop v. Colombian Emeralds Int'l*, 43 V.I. 193, 197 (Terr. Ct. 2001).

exercised.[28] The offeror can require notice of acceptance of the option in any form and manner, so long as the offeror specifies. Again, persuasive precedent on option contracts in leases is applicable and informative. A lessee must generally act in strict accordance with any requirements a lease agreement prescribes with respect to giving notice of acceptance of the option.[29]

In order to exercise an option to renew a lease, the lessee must inform the lessor in "unequivocal terms of his unqualified intention to exercise his option, within the time, in the manner and on the terms stated in the lease."[30] On the other hand, where there is nothing in the parties' agreement specifying the way to convey such notice, the courts have recognized that no particular form and method is required; however, the notice still must evidence the lessee's definite and unqualified intention to exercise the option.[31] Without clear intention to exercise an option to renew, a renewal will be ineffective. Additionally, the option must be accepted in a totally unqualified manner.[32]

Moreover, where the option expressly requires written notice, in the absence of words or conduct on the part of the lessor indicative of waiver or estoppel, the exercise of the option is ineffective unless such written notice is provided in conformity with the terms of the agreement. On the other hand, absent a stipulation in the lease that the notice must be in writing, most courts recognize that notice may be communicated either verbally or in writing.[33]

In this case, Act 5231 does not provide any specific procedures for effectuating a renewal of the franchise agreement. Specifically, Act 5231 states, "the franchisee shall have the option to renew the franchise for an

---

[28] 63 AM. JUR. PROOF OF FACTS 3D 423 (Originally published in 2001) (internal citations omitted).

[29] *See id.*

[30] *Bekins Moving & Storage Co. v. Prudential Ins. Co.*, 176 Cal. App. 3d 245, 221 Cal. Rptr. 738, 740 (2d Dist. 1985); *see also Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 561 (N.D. 1981) ("Generally, options must be accepted unequivocally and in accordance with the terms of the option.").

[31] *See, e.g., James v. Hutchinson*, 211 S.W.2d 507, 511 (Mo. Ct. App. 1948); *Jay Gee Commerce, Inc. v. Havas*, 89 Nev. 157, 508 P.2d 1015 (Nev. 1973); *Blakeslee v. Davoudi*, 54 Ore. App. 9, 633 P.2d 857, 860 (Or. App. 1981).

[32] 63 AM. JUR. PROOF OF FACTS 3D 423.

[33] *Id.*

160

additional ten-year period subject to the provisions of the [A]ct." As the provisions of the Act do not provide any guidance on additional renewal requirements, the language "subject to the provisions of the [A]ct" must apply to the renewal term and not the act of renewing the option. Even if "subject to the provisions of the [A]ct" did refer to the process of renewal, Act 5231 contains no formal renewal requirements. Therefore, any renewal would be sufficient.

### B. Act 5231 contained all the material terms necessary for a formal renewal.

The Defendants argue that the February 13, 1995 letter cannot be an effective renewal because it does not contain the necessary material terms of the franchise; in other words, that the renewal agreement, if there was one, was indefinite. The Court finds that this argument is without merit as there are no new terms that would require negotiation before the franchise could be renewed.

■■■ "Indefiniteness may prevent enforcement of a contract in two different ways: it may mean that a manifestation of intention is not intended to be understood as an offer; or, even though the parties intended to enter into a contract, there may be no sufficient basis for giving an appropriate remedy."[34] Indefiniteness is not a concern in the present case. First, it is undisputed that the renewal option was intended to be understood as an offer to renew for an additional ten-year period. Second, there is certainly a sufficient basis for an appropriate remedy in this matter — namely, monetary damages. Indefiniteness in the February 13, 1995 letter as to the franchise fee does not prevent a finding that the franchise was properly renewed because the basis for franchise fees, along with every other material term of the franchise agreement, was already included in Act 5231.

When questioned by the Court at the March 21, 2013 hearing, the Defendants admitted that Act 5231 laid out the franchise agreement in its entirety except for the franchise fee, which according to the Defendants was the only term of the contract that needed to be negotiated and included in the renewal. However, the franchise agreement requires that the contract price be renegotiated every four years. This means the fourth year, the eighth year, and, if renewed, the twelfth year.

---

[34] *Id.*

161

The renewal could, but does not necessarily, have the effect of rebooting the contract as though the prior agreement never existed. The effect of the renewal is to simply extend the duration of the contract for an additional ten years. The language in the February 13, 1995 letter requesting "to negotiate franchise fees for the renewal term" may be understood to mean the next four-year period for which franchise fees were not yet negotiated (beginning in year twelve). It may also be a misstatement as to when renegotiation of franchise fees is required. In either case, the contract price would not need to be renegotiated until the second year of the renewal period. The absence of a negotiated franchise fee in the February 13, 1995 letter does not prevent the letter from functioning as a proper renewal.

■ Finally, the Defendants argue that the February 13, 1995 letter's reference to executing necessary paperwork for the renewal shows that there must be some additional document or process to finalize the renewal. This argument does not defeat VITA's claim for renewal. It is the opinion of this Court that no additional paperwork was necessary to renew the contract. Act 5231 itself laid out all the necessary contract terms, including the option to renew. The belief on the part of the letter drafter that additional written formalities are or may be necessary does not make such formalities actually necessary. The letter by itself provided the requisite notice to VIPA that VITA was renewing the franchise agreement.

## CONCLUSION

The parties have agreed, and the Court concurs, that there are no genuine issues of material fact and judgment as a matter of law is appropriate. After reviewing the facts on the record, this Court finds that the franchise agreement included an option for renewal that VITA timely exercised through the February 13, 1995 letter. Accordingly, the Court finds that the franchise agreement was properly renewed. Plaintiff's Amended Motion for Partial Summary Judgment will be granted.