**HOWARD CONSTRUCTION COMPANY, Plaintiff-Appellant,**

v.

**JEFF–COLE QUARRIES, INC., Defendant-Respondent.**

**No. WD 34001.**

Missouri Court of Appeals, Western District.

Nov. 8, 1983.

As Modified Dec. 28, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 28, 1983.

Application for Transfer Sustained Jan. 17, 1984.

Case Retransferred May 21, 1984.

Court of Appeals Opinion Readopted May 25, 1984.

John W. Ellinger, Jefferson City, for plaintiff-appellant.

David Brydon, Johnny K. Richardson, Hawkins, Brydon & Swearengen P.C., Jefferson City, for defendant-respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

This case arose out of an action brought by Howard Construction Company (hereinafter "Howard Construction" or "Plaintiff") against Jeff-Cole Quarries, Inc. (hereinafter "Jeff-Cole" or "Defendant"), seeking damages on a breach of contract theory (Count I), or in the alternative, a promissory estoppel theory (Count II). The trial court granted summary judgment in favor of defendant on both Counts. Plaintiff contends on appeal that the trial court (1) erred in granting defendant's motion for summary judgment as to Count I because defendant failed to meet the burden of proof under Rule 74.04 [1] and (2) erred in finding that the statute of frauds barred Count I of plaintiff's complaint. We affirm the judgment.

---

[1] The "Rules" referred to are the Missouri Rules of Civil Procedure.

Howard Construction was the successful bidder on a Missouri Highway Department project to construct a portion of Highway 54. Before Howard Construction was awarded the contract, it received from Jeff-Cole a typewritten document entitled "Proposal"[2] which referred to the Missouri Highway Project and listed descriptions, quantities and prices on types of rock needed for the project. The proposal contains six separate entries including a base type and asphaltic types of rock. It was dated November 21, 1972, and was signed by Harry Adrian, president of Jeff-Cole. The bid letting for the highway project took place in December, 1972, and Howard Construction was awarded the contract. Within a few weeks after the bid letting, the general superintendent of Howard Construction, Glenn Moore, met with Harry Adrian at defendant's office. The foregoing facts are not in dispute.

The parties do disagree, however, as to what occurred at that meeting. Plaintiff contends that Glenn Moore and Harry Adrian reached an oral agreement at the meeting and that Glenn Moore altered the typewritten prices on the proposal in his own handwriting to reflect the agreement that was reached. Plaintiff relies on Glenn Moore's deposition which reads as follows:

Q: Now, this particular document appears to have some figures written on it. Do you know anything about the various figures that are written in over the typing?

A: Yes, sir.

Q: What are those figures?

A: Those is [sic] after we got the job I went to Jeff-Cole's office and sat down with them. And those are the prices we came up with.

Q: All right, when you say you sat down with them, are you talking about Roger Adrian and Harry Adrian?

A: I'm talking about Harry Adrian.

. . . .

Q: Whose handwriting are those figures in if you know?

A: They are mine.

Q: You after discussion with Harry Adrian, changed—

A: We agreed on those prices that's [sic] written in.

Although defendant admits in its pleadings that discussions ensued between Jeff-Cole and Howard Construction, defendant denies that any agreement was ever reached in those discussions. Thus, the only disputed fact is whether the parties ever arrived at an agreement for the sale of asphaltic rock.

After the meeting between Mr. Moore and Mr. Adrian, at which the proposal was altered, Howard Construction, on January 12, 1973, mailed a purchase order to Jeff-Cole. It contained essentially the same items, quantities and prices listed on the altered proposal. The only other written document is a formal contract dated June 12, 1973, for the sale of base rock signed by agents of both parties. The subject matter of the contract, a base rock, is of the same description, quantity and price as the second entry on the altered proposal and the first entry on the purchase order.[3] The contract, however, does not refer to any of the other types of rock which the proposal and the purchase order listed.

On appeal, Howard Construction first claims that defendant failed to meet the burden of proof under Rule 74.04 and that the trial court's grant of summary judgment was therefore in error. Howard Construction contends that a genuine issue exists as to a material fact because the parties dispute whether or not they ever entered into an agreement for the sale of asphaltic rock.

■ Summary judgment is authorized where, but only where, the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

2. See the Appendix to this opinion for a copy of the "Proposal".

3. The contract was for the sale of: "ITEM NO. 304–01.02 TYPE 1 AGGR. FOR BASE APPROX. 99,600 TONS FOR A PRICE PER TON OF $1.55 WATER INCLUDED." The purchase order is reproduced in the appendix to this opinion.

and that any party is entitled to a judgment as a matter of law." Rule 74.04(c). (As no affidavits were filed in this case, the record before us consists of the pleadings, the three documents they incorporate [the proposal, the purchase order, and the contract], and the deposition of Glenn Moore.) The reviewing court, as well as the trial court, must view the record on a motion for summary judgment in the light most favorable to the party against whom the motion was filed, *Stanturf v. Sipes*, 447 S.W.2d 558, 561 (Mo.1969); *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972); Rule 74.04, and accord such party the benefit of every doubt. *Perkins v. Schicker*, 641 S.W.2d 432, 434 (Mo.App.1982); *Kohn v. Cohn*, 567 S.W.2d 441, 443 (Mo.App.1978). Viewed in this light, the record indicates that the factual question whether the parties ever reached an agreement is indeed disputed.

Jeff-Cole contends, however, that summary judgment was properly granted because this dispute does not involve material facts, "i.e., those which have legal probative force as to a controlling issue." *Kohn v. Cohn, supra,* at 443. Defendant argues that the dispute over whether an agreement was reached does not involve material facts because even if the court accepts as true plaintiff's assertion that an oral agreement was reached, the statute of frauds bars enforcement of that agreement.

█ If the contract for the sale of asphaltic rock is indeed unenforceable because of the statute of frauds, then the issue whether the oral contract was made is not a material issue of fact which would preclude the entry of summary judgment for Jeff-Cole. *Hammonds v. Calhoun Distributing Co., Inc.,* 584 S.W.2d 473, 475 (Tex.Civ.App.1979).

Subsections (1) and (2) of § 400.2–201 [4] read:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

Subsection (1) sets forth the basic rules for satisfying the statute of frauds in a contract for the sale of goods for $500 or more. The Official Comment to the Uniform Commercial Code establishes "three definite and invariable requirements" as to the writing. First, the memorandum must evidence a contract for the sale of goods; second, it must be "signed," a word which includes any authentication which identifies the party to be charged; and third, the memorandum must specify a quantity.

█ Subsection (2) eliminates the signature requirement when both parties are merchants.[5] If the merchant sending the confirmatory memorandum has met the requirements of the subsection and if the merchant receiving the writing does not give any notice of objection within ten days of its receipt, then the confirmatory writing need not be signed by the receiving merchant in order to satisfy the statute of frauds. Courts have, however, required that the writing be signed by the sender in

---

4. Revised Statutes of Missouri, 1978. Chapter 400 of the revised statutes contains the Uniform Commercial Code as adopted in Missouri. For convenience, only the U.C.C. section and subsection numbers are used here.

5. That both parties are "merchants" within § 2–201(2) is not contested. *See A & G Const. Co., Inc. v. Reid Bros. Logging Co., Inc.,* 547 P.2d 1207, (Alaska 1976) (where supplier of materials for use in highway construction and general contractor for project were "merchants" within § 2–201(2)).

order to be "sufficient against the sender." *E.g., Evans Implement Co. v. Thomas Industries, Inc.,* 117 Ga.App. 279, 160 S.E.2d 462, 463 (1968). The confirmatory memorandum must also state a quantity term and must be sufficient to indicate that a contract for sale has been made. Thus, in order for a writing to satisfy the requirements of subsection (2) it must meet the basic requirements of subsection (1) except that the confirmatory memorandum under subsection (2) need not be signed by the party to be charged; only the signature of the sender is required. *See Perdue Farms, Inc. v. Motts, Inc. of Mississippi,* 459 F.Supp. 7, 16 and nn. 15–16 (N.D.Miss. 1978).

The primary requirement under both subsections (1) and (2) is that the writing evidence an agreement between the parties. Although the language of the two subsections differs in that subsection (1) requires "some writing sufficient to indicate that a contract for sale has been made" and subsection (2) requires "a writing in confirmation of the contract and sufficient against the sender," courts have found that the § 2–201(2) confirmatory memorandum must satisfy the "sufficient to indicate" requirement of § 2–201(1). *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America, Inc.,* 396 Pa. 506, 153 A.2d 472, 476 (1959). *See also* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* 62, 64 (2d ed. 1980).

■ The official comment to U.C.C. § 2–201 explains that "[a]ll that is required" for a writing to sufficiently indicate that a contract for sale has been made "is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." One writer has suggested that the spirit of the comments seems to be that "sufficient to indicate" is roughly equivalent to "more probably than not." J. White, *supra,* at 62. In other words, if it is more probable than not that the writing evidences a deal between the parties, then the writing should be found sufficient.

Case law on the "sufficient to indicate" requirement arises from interpretations of both § 2–201(1) and (2). Most courts have required that the writing indicate the consummation of a contract, not mere negotiations. *See, e.g., Oakley v. Little,* 49 N.C. App. 650, 272 S.E.2d 370, 372–73 (1980); *Rockland Industries, Inc. v. Frank Kasmir Associates,* 470 F.Supp. 1176, 1178–79 (N.D.Tex.1979). Thus, a writing which contained language indicating a tentative agreement has been found insufficient to indicate that a contract for sale had been made. *Arcuri v. Weiss,* 198 Pa.Super.Ct. 506, 184 A.2d 24, 26 (1962) (check inscribed with "tentative deposit on tentative purchase" held insufficient because it indicated no final committment had been made). Writings which do not contain words indicating that a binding or completed transaction has occurred have been found insufficient. *E.g., Trilco Terminal v. Prebilt Corp.,* 167 N.J.Super. 449, 400 A.2d 1237, 1240–41 (N.J.Super.Ct.Law Div. 1979) *aff'd. per curiam,* 174 N.J.Super. 24, 415 A.2d 356 (N.J.Super.Ct.App.Div.1980) (mere purchase orders which did not refer to previous agreement held insufficient). Some courts have required that the writings completely acknowledge the evidence of an agreement. *E.g., N. Dorman & Co., Inc. v. Noon Hour Food Products, Inc.,* 501 F.Supp. 294 (E.D.N.Y.1980). Even those courts giving a liberal interpretation to the requirement that the writing evidence an agreement have insisted that the terms of the writing at least must allow for the inference that an agreement had been reached between the parties. *See, e.g., Harry Rubin & Sons v. Consolidated Pipe Co. of America, Inc., supra,* 153 A.2d at 475–76; *Perdue Farms, Inc. v. Motts, Inc. of Mississippi, supra,* at 17 (where the words "confirmation of purchase" allow for inferences that writing confirmed some agreement previously made by the parties); *M.K. Metals, Inc. v. Container Recovery Corp.,* 645 F.2d 583, 591 (8th Cir.1981) (where the terms of the purchase order were so specifically and clearly geared to the desires of the party to be charged that the purchase order reflected a completed contract).

The Kansas Supreme Court, however, in *Southwest Engineering Co., Inc. v. Mar-*

tin Tractor Co., Inc., 205 Kan. 684, 473 P.2d 18 (1970), held at 473 P.2d 26 that a mere price list afforded "a substantial basis for the belief that it rest[ed] on a real transaction." In that case, employees of the buyer and seller met and discussed the sale of a generator. The seller's employee listed the generator, various accessories, and their prices on a piece of paper on which he also handprinted his name and his company's name. The seller later refused to deliver the generator, and the buyer purchased a substitute for $27,541. The buyer sued for the difference in price, and the seller contended that the contract was unenforceable because of the statute of frauds, KAN.STAT.ANN. § 84.2–201 (1965). The Kansas Supreme Court held for the buyer and found that the writing met the statutory requirements.

The court's finding that the writing evidenced a contract has been severely criticized. See 84 Harv.L.Rev. 1737 (1971). That criticism stems from the fact that "[t]he memorandum before the court—on its face nothing more than a price list—was proof not of agreement, but, at most, only of negotiations." Id. at 1738. Finding such writing sufficient plants the seeds for allowing the statute of frauds to be satisfied by any evidence of mere negotiations.

■■■ While U.C.C. § 2–201 was indeed designed to eliminate much of the rigidity produced by prior interepretations of the statute of frauds, it retained some safeguards against fraudulent commercial practices. Arcuri v. Weiss, supra, 184 A.2d at 26. The requirement that the writing indicate that a contract for sale has been made is one of those safeguards. The words "as per our agreement," "in confirmation of," or "sold to buyer," would indicate that the parties had reached an agree-

ment. Even the terms of the writing itself might be so specific and favorable to the party against whom the writing is offered that the court at least could draw the inference that an agreement had been reached. See, e.g., M.K. Metals, Inc. v. Container Recovery Corp., supra, at 591. Such writings would deter fraudulent assertions that a contract had been agreed upon where in fact only negotiations had taken place. The price list which the Kansas Supreme Court found sufficient to indicate that a contract had been made, however, contained no such words or terms. Thus, the decision in Southwest Engineering has been criticized as one that substantially weakens the protection offered by the statute of frauds, 84 Harv.L.Rev., supra, at 1739, and as a "case that may go too far." J. White, supra, at 62 n. 63.

■■ In the case at bar, the writings are similar to the document in Southwest Engineering. We hold that they do not satisfy the requirements of U.C.C. § 2–201(1) or (2) because the writings, considered either separately or together, do not even allow for the inference that an agreement had been reached between the parties for the sale of asphaltic rock.

■■■ Although the typewritten proposal was signed by an agent of Jeff-Cole (prior to the handwritten alterations made thereon by plaintiff's agent) and states specific quantity terms, no words on the writing allow for the inference that any agreement was reached between the parties and therefore it does not by itself meet the primary requirement of either § 2–201(1) or (2).[6] Viewed in the light most favorable to the plaintiff, the unaltered proposal could be no more than an offer by Jeff-Cole.[7]

---

6. The proposal could not suffice as a confirmatory memorandum under § 2–201(2) for the obvious reason that it was not delivered to Jeff-Cole.

7. A question remains as to whether the unaltered proposal even constituted an offer as opposed to a mere invitation to deal. Ordinarily, preliminary price quotations are not considered offers binding on the supplier. Thomas J. Sheehan Co. v. Crane Co., 418 F.2d 642, 645–46 (8th Cir.1969). Whether the proposal was an offer and not merely a quotation of prices, depends

upon the intentions of the offerer as manifested by the facts and circumstances of each particular case. Interstate Indus. v. Barclay Indus., 540 F.2d 868, 871 (7th Cir.1976); La Grange Metal Prod. v. Pettibone Mulliken Corp., 106 Ill.App.3d 1046, 62 Ill.Dec. 619, 624, 436 N.E.2d 645, 650 (1982). The Sheehan case does not control here because of the "specific terms" contained in the unaltered proposal. Moreover, Jeff-Cole refers to the unaltered proposal as an offer in its motion for summary judgment.

■ Assuming that the typewritten proposal was an offer, neither the alterations made on the proposal by Glenn Moore nor the purchase order sent by Howard Construction to Jeff-Cole could constitute an acceptance. Although U.C.C. § 2–207 rejects the common law mirror image rule and converts many common law counteroffers into acceptances, no contract is formed when the acceptance diverges significantly as to a material term. *See Duval & Co. v. Malcom*, 233 Ga. 784, 214 S.E.2d 356 (1975); *Meister v. Arden-Mayfair, Inc.*, 276 Or. 517, 555 P.2d 923 (1976) (buyer's redrafted form, changing material terms, held counteroffer). *See also* J. White, *supra*, at 37 (reciting example of a purchase order calling for the sale of 200,000 pounds of lard at ten cents a pound and an acknowledgement responding with 200,000 pounds at fifteen cents a pound to illustrate a document which diverges significantly as to a material term and which, therefore, under 2–207(1) is not an acceptance). The handwritten alterations made by Glenn Moore on the proposal and the terms of the purchase order sent by Howard Construction to Jeff-Cole diverge significantly from the terms of the unaltered proposal—Jeff-Cole's offer. For example, Jeff-Cole's unaltered proposal lists Item No. 390–90.00, temporary surfacing, at $1.55 a ton for 150 tons. Howard Construction altered the price to $1.85 a ton. Similar alterations were made by Howard Construction as to each of the terms listed on Jeff-Cole's proposals. These price changes constitute significant divergences of material terms and therefore neither the handwritten alterations made on the typewritten proposal nor the purchase order is an acceptance under § 2–207(1).

■ Because the price terms of the alterations and the purchase order radically differ from the price terms of the unaltered proposal, they could indeed constitute a counteroffer. *Meister v. Arden Mayfair, Inc.*, *supra*, 555 P.2d at 924–25. The only writing evidencing an acceptance of this counter-offer, however, is the formal contract between Jeff-Cole and Howard Construction for the sale of base rock. That contract is void of any reference to the asphaltic types of rock which were also listed on the proposal and the purchase order. Thus, the writings when taken together do not evidence a contract for the sale of asphaltic rock. At best, they evidence negotiations for the sale of asphaltic rock and a separate and completed contract for the sale of base rock.

■ Although Howard Construction concedes that the handwritten alterations on the proposal were made by Glenn Moore (Howard Construction's agent) *after* the proposal was signed by Jeff-Cole's agent, Howard Construction appears to argue that the proposal as altered reflects an agreement reached by the parties and thus satisfies § 2–201(1). Plaintiff argues that Glenn Moore's deposition, in which he asserted that he and Harry Adrian "agreed on those prices that's written in," tends to prove that an agreement was reached. While such evidence is indeed relevant to the issue of whether an agreement was reached between the parties (and would prevent the grant of summary judgment in favor of Jeff-Cole were it not for the bar of the statute of frauds), it is not relevant to the issue of whether the *writing itself* reflects an agreement. *R.S. Bennett & Co., Inc. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182 (7th Cir.1979).

■ Howard Construction confuses the parol evidence rule with the statute of frauds requirements. The parol evidence rule presupposes a contract has been made and is concerned only with what the terms of that contract are. Thus, the parol evidence rule provides that a written agreement, incomplete on its face, may be supplemented or explained by testimony concerning a prior or contemporaneous agreement, if such parol evidence is consistent with the written agreement. *See South Side Plumbing Co. v. Tigges*, 525 S.W.2d 583, 588 (Mo.App.1975). Such evidence is inadmissable, however, in determining whether the statute of frauds requirements have been met. *R.S. Bennett & Co., Inc. v. Economy Mechanical Industries, Inc.*, *supra*. In fact, the major purpose of the

writing requirement is to prevent claims of agreement where none has been made. The statute of frauds requirement does not presuppose that an agreement has been made as does the parol evidence rule. *J. White & R. Summers, supra,* at 75, n. 119. We thus disagree with Howard Construction's premise that Mr. Moore's statements in his deposition should be considered in determining whether the writing satisfies the statute of frauds. To permit such evidence on this issue would result in the anomalous sequence of allowing proof of an oral contract *before* the determination has been made that the writing itself is sufficient to remove the bar of the statute of frauds. *Id.* at 186, n. 4. *See also Womack v. Worthington,* 561 S.W.2d 564, 567 (Tex.Civ.App.1978), and *Hammonds v. Calhoun Distributing Co., supra,* at 475.

Thus, the determination of whether the altered proposal satisfies the statute of frauds requirement that the writing at least allow for the inference that an agreement was reached, must be made by looking solely to the writing itself. In so doing, we find that the proposal as altered by Glenn Moore's handprinted figures does not contain any terms which indicate that an agreement had been reached. The altered proposal is similar to the typewritten proposal in that neither contains terms from which the inference can be drawn that an agreement was reached between the parties. *Compare M.K. Metals, Inc. v. Container Corp., supra.* At best, the altered proposal may allow for the inference that the parties had negotiated.[8]

Howard Construction next contends that the purchase order sent by them to Jeff-Cole is a confirmatory memorandum which meets the requirements of § 2–201(2). The requirement under § 2–201(1) that the writing evidence an agreement applies with equal force to § 2–201(2). *Perdue Farms, Inc. v. Motts, Inc. of Mississippi, supra.* The purchase order thus fails to meet the requirements of § 2–

201(2) for the same reason that the proposal (in its typewritten and altered form) failed to meet the requirements of § 2–201(1). It does not indicate that an agreement had been made. The purchase order, like the proposal, is void of any terms on its face which indicate or would allow us to infer that an agreement was ever reached between the parties. *See Trilco Terminal v. Prebilt Corp., supra; Harry Rubin & Sons v. Consolidated Pipe Co. of America, Inc., supra.* Nor does the fact that the terms of the purchase order correspond to the terms of the altered proposal create any basis on which we can make such an inference, either. *Compare M.K. Metals, Inc. v. Container Recovery Corp., supra* (where the terms of the purchase order allowed for inference of agreement even though no words indicating or referring to an agreement appeared in the writing). As we stated above, the altered proposal, at best, reflects nothing more than negotiations. It does not indicate that an agreement was ever reached between the parties for the sale of asphaltic rock.

None of the writings, whether analyzed separately or in conjunction with each other allows for the inference that an agreement was reached between Jeff-Cole and Howard Construction. The primary requirement under § 2–201(1) and (2) that the writing evidence a contract has thus not been satisfied. The statute of frauds therefore bars further evidence of the alleged agreement and bars enforcement of the same as a matter of law. *Womack v. Worthington, supra; Hammonds v. Calhoun Distributing Co., supra.* Because the alleged oral contract for the sale of asphaltic rock is unenforceable as a matter of law under the statute of frauds, we hold that the trial court's grant of summary judgment in favor of Jeff-Cole was proper.

Howard Construction's contention that the statute of frauds should not bar Count I of its complaint because the "defendant has performed in part," is without merit. U.C.C. § 2–201(3)(c) provides:

---

**8.** As was explained above, the altered proposal might also constitute a counteroffer by Howard Construction but as no acceptance was ever given by Jeff-Cole to Howard Construction for the sale of asphaltic rock, the writings evidence only negotiations.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . . .

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted. . . .

The exception to the writing requirement in this subsection limits enforceability to the goods that the buyer has received and accepted or paid for. *Sedmak v. Charlie's Chevrolet, Inc.,* 622 S.W.2d 694 (Mo.App. 1981).

This subsection validates a divisible contract only for as much of the goods as have been delivered and paid for. *Sedmak v. Charlie's Chevrolet, Inc., supra.* Only the base rock—the subject matter of the formal contract—was delivered and paid for. No asphaltic rock—the subject matter of the alleged oral contract—was ever delivered or paid for. The delivery of the base rock can only be deemed complete perform-ance of the parties' separate contract for the sale of base rock. Thus, the statute of frauds still bars enforcement of Howard Construction's alleged oral contract for the sale of asphaltic rock.

■ We do not consider whether the trial court erred in granting summary judgment in favor of defendant as to Count II because plaintiff failed to preserve the issue for appeal. *See Ramacciotti v. Joe Simpkins, Inc.,* 427 S.W.2d 425, 426 (Mo. 1968); *Hastings v. Coppage,* 411 S.W.2d 232, 235 (Mo.1967); *Delmonte Corp. v. Stark & Son Wholesale, Inc.,* 474 S.W.2d 854, 857 (Mo.App.1971). Even if plaintiff's first point on appeal includes an allegation of error as to Count II, no argument was presented in the brief concerning promissory estoppel. *See Kinder v. Pursley,* 488 S.W.2d 937, 940 (Mo.App.1972).

Accordingly, we affirm the judgment of the trial court.

All concur.

## APPENDIX
### EXHIBIT 1
# JEFF-COLE QUARRIES, INC.
### GENERAL CONTRACTORS
HIGHWAY 54 SOUTH
JEFFERSON CITY, MISSOURI 65101

NOVEMBER 21, 1972

P R O P O S A L

RE: MISSOURI STATE HIGHWAY
PROJ. DP-F-54-3(37)
ROUTE 54, COLE COUNTY

| ITEM NO. | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|---|
| 301-20.00 | MINERAL AGGR. BITUM. BASE | 85,795.0 | TONS | 1.55 1.65 | |
| 304-01.02 | TYPE 1 AGGR. FOR BASE | 99,600.0 | TONS | 1.55 | |
| 310-50.02 | GRAVEL (A) OR STONE (B) | 3,908.0 | TONS | 1.85 | 2.43 |
| 390-90.00 | TEMPORARY SURFACING | 150.0 | TONS | 1.85 | 2.43 |
| 403-70.00 | 1" MIN'L AGGR. TYPE "B" ASPH. | 13,996.0 | TONS | 2.45 | 2.65 |
| 403-80.00 | ½" MIN'L AGGR. TYPE "C" ASPH. | 13,117.0 | TONS | 2.45 | 2.65 |

TOTAL FOR PROJECT.................

WE HAVE THREE (3) SITES AVAILABLE ON THE PROJECT. SITE A IS BETWEEN STA. 763+00 AND STA. 775+00, APPROX. 500 FT. OFF RT. 54. SITE B IS BETWEEN STA. 815+00 AND STA. 830+00, APPROX. 2000 FT. OFF RT. 54. SITE C IS BETWEEN STA. 940+00 AND STA. 970+00, APPROX. 500 FT. OFF RT. 54.

WE PREFER SITE____, HOWEVER, IT WILL BE OUR OPTION TO SELECT THE SITE AFTER FINAL DETERMINATION OF THE ROCK QUALITY IS MADE. AN ASPHALT PLANT SITE WILL BE AVAILABLE AT ALL 3 LOCATIONS.

THE PRICE FOR TYPE 1 AGGR. FOR BASE ABOVE INCLUDES PUGGING. IF YOU PREFER TO USE HIGHWAY DEPARTMENT BATCH WEIGHTS IN LIEU OF OUR SCALE WEIGHTS ON THE MINERAL AGGR. BITUMINOUS BASE AND AGGR. FOR TYPES "B" & "C" ASPHALT MIX, ADD THE FOLLOWING;

MINERAL AGGR. BITUM. BASE
MINERAL AGGR. TYPE "B"
MINERAL AGGR. TYPE "C"

RESPECTFULLY SUBMITTED,

HARRY H. ADRIAN, PRESIDENT
JEFF-COLE QUARRIES, INC.

EXHIBIT 2

PURCHASE ORDER

N° 322

# Howard Construction Company
## & AFFILIATED COMPANIES
1504 North Osage — Sedalia, Missouri

SUED TO: ... **Jeff Cole Quarries**...... . .. . ...... .....
Highway 54 South . ... .. ... ......
Jefferson City, Missouri

PROJECT: .DP-P-54-3(37) ——
.. ... Route 54 ——
....... . Cole, County——

lease Invoice    HOWARD    □ BRIDGE
⊠ CONSTRUCTION COMPANY.
□ QUARRIES

Job #91

PRICES AS PER QUOTATION DATED:   1/2/73

| QUANTITY | ITEM | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|
| 99,600 Tons | Type 1 Aggregate for Base (Pugged) | 1.55 | 154,380.00 |
| 3,908 Tons | Crushed Stone (B) | 1.80 | 7,034.40 |
| 150 Tons | Temporary Surfacing | 1.80 | 270.00 |
| 85,795 Tons | Mineral Aggregate (Bit. Base) | 1.70 | 145,851.50 |
| 33,000 Tons | Crushed Rock for Type B & C Asphalt | 2.65 | 87,450.00 |
| | | | |
| | Rock for Mineral Aggregate (Bit. Base) and Type B & C Asphalt will be batch weights from job mix approved by the M.S.H.D. | | |

Net 15 Days

TOTAL

ALL MATERIAL TO MEET THE MINIMUM REQUIREMENTS OF THE SPECIFICATIONS FOR THE PROJECT SHOWN ABOVE.

By: Jake Moore
General Supt.

ACCEPTED BY: ........... ... .. ...

Title: ... .. . ...........