FIRST BANK (N.A.), Plaintiff,

v.

H.K.A. ENTERPRISES, INC., Jerry P. Kulinski, Edward H. Hanson, John L. Albert a/k/a Jack Albert, Defendants-Third Party Plaintiffs-Respondents,†

H.K.A. ENTERPRISES, a Wisconsin partnership, Jerry P. Kulinski and Kerry Kulinski, husband and wife, and in relation to their marital property, Edward H. Hanson and Joan Hanson, husband and wife, and in relation to their marital property, Defendants-Respondents,

v.

NORTHPORT MARINE, INC., Third Party Defendant-Appellant.

Court of Appeals

*No. 93–1370. Submitted on briefs March 2, 1994.—Decided March 31, 1994.*

(Also reported in 515 N.W.2d 343.)

†Petition to review filed.

For the third party defendant-appellant the cause was submitted on the briefs of *Richard C. Thompson* of *Thompson Law Office, Ltd.,* of La Crosse.

For the defendants-third party plaintiffs-respondents the cause was submitted on the brief of *Dan Arndt* of *Arndt, Buswell & Thorn, S.C.,* of Sparta.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.    Northport Marine, Inc., appeals from a judgment entered on a jury verdict finding that it had contracted to purchase a boat from H.K.A. Enterprises,

Inc., and denying its motion to change answers in the verdict.

The dispositive issue is whether, as a matter of law, the purported contract complied with a provision in the Uniform Commercial Code (UCC) known as the "statute of frauds," which requires contracts for the sale of goods for $500 or more to be evidenced by a written document. Section 402.201(1), STATS. Because we conclude that it did not, we reverse the judgment.

H.K.A. owned a houseboat that it rented to a large corporation for use in entertaining its customers and clients on Mississippi River cruises.[1] When H.K.A. became interested in selling the boat in early 1990, it contacted several possible purchasers, including Northport Marine.

Witnesses for H.K.A. testified at trial that an agreement was reached in a series of telephone conversations to sell the boat to Northport for $38,000. Witnesses for Northport testified that, while there were discussions between the two companies, no final agreement was reached.

Northport took the boat from H.K.A.'s facility in La Crosse to its marina in Alma. Sometime thereafter, an employee of H.K.A. telephoned Michael Inglett, Northport's president, asking whether he would prepare "an appraisal of the boat in [both] an average condition and . . . in [its present] condition . . . ." H.K.A.

---

[1] It is arguable that extrinsic evidence of the terms of the asserted oral contract between H.K.A. and Northport may not be relevant until H.K.A. establishes that the "writing" it claims validated the oral agreement—an appraisal of the boat prepared by Northport—satisfies § 402.201(1), STATS. Because, however, the facts surrounding the parties' conversations are not in dispute and we deem them essential to disposition of the case, we discuss them in the opinion.

wanted the appraisal because it was planning to take legal action against the former renter of the boat for failing to keep it in repair during the lease term. Inglett complied with the request, preparing the appraisal and forwarding it to H.K.A.

Several weeks later, H.K.A. wrote to Northport "to reconfirm our agreement . . . to sell you our houseboat . . . for the sum of $38,000." Northport responded, stating that it would purchase the boat for $20,000. H.K.A. then sued Northport for breach of contract.

At the conclusion of the trial testimony, Northport moved for a directed verdict, arguing that the UCC "statute of frauds," § 402.201(1), STATS., barred enforcement of any oral contract for the sale of the boat. The statute provides: "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." *Id.*

The trial court denied the motion, concluding that the Inglett appraisal met the requirements of the statute, and the jury returned a verdict finding that Northport had agreed to purchase the boat for $38,000. Northport then moved for judgment notwithstanding the verdict, renewing its argument that the agreement had not been memorialized in writing as required by § 402.201(1), STATS. The trial court denied the motion and this appeal followed.

The appraisal that H.K.A. claims satisfies the statute is a two-page document entitled "Estimate" and is signed by Inglett. It begins by reciting approximate values for a "50' Skipperliner" houseboat in "excellent," "average," and "poor" condition, followed by a detailed list of the particular boat's components and equipment,

421

a second list of items "Need[ing] Repair," and a third list of "Missing" items. It then reads as follows:

| | | |
|---|---|---|
| ITEM A: | Average—in good condition 1984 50' SkipperLiner | $46,050.00 |
| ITEM B: | Deduct areas in need of repair | − 8,050.00 |
| ITEM C: | Missing Items | − 1,050.00 |

---

| | | |
|---|---|---|
| PURCHASE PRICE | | $38,000.00 |
| MINUS: Missing Items | | − 1,050.00 |
| | | $36,950.00 |

---

    Section 402.201(1), STATS., is part of the UCC, as adopted in Wisconsin, and the Official UCC Comment to the section provides as follows:

> The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence [of the existence of the contract] rests on a real transaction. It may be written in lead pencil on a scratch pad. It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted.
>
>   . . . .
>  Only three definite and invariable requirements as to the memorandum are made by this

subsection. First, it must evidence a contract for the sale of goods; second, it must be "signed", a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

WIS. STAT. ANN. § 402.201 (West 1964).

We agree with the parties that the issue is whether the writing—the appraisal—is "sufficient to indicate that a contract for sale has been made"; that is, whether it "afford[s] a basis for believing that the offered oral evidence [of the purported contract] rests on a real transaction."

Agreeing with the trial court, H.K.A. maintains that we need go no further than the document itself: the document plainly and unambiguously meets the statutory "writing" requirement. We disagree. Whether a set of facts—here a document—complies with the provisions of a statute is a question of law, which we review independently. *L.R.E. v. R.E.J.*, 168 Wis. 2d 209, 215, 483 N.W.2d 588, 590 (Ct. App. 1992), *cert. denied*, 113 S. Ct. 601 (1992).

The Missouri Court of Appeals discussed cases interpreting the UCC provision in *Howard Constr. Co. v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 227 (Mo. Ct. App. 1983):

> Most courts have required that the writing indicate the consummation of a contract, not mere negotiations. Thus, a writing which contained language indicating a tentative agreement has been found insufficient to indicate that a contract for sale had been made. Writings which do not contain words indicating that a binding or completed transaction has occurred have been found insufficient. Even those courts giving a liberal interpretation to the

423

requirement that the writing evidence an agreement have insisted that the terms of the writing at least must allow for the inference that an agreement had been reached between the parties.

(Citations omitted.)[2]

Thus, courts have recognized that "it is essential, in order to satisfy the statute of frauds, that the 'signed memoranda', standing alone, acknowledge the existence of a 'contractual status.' " *Oakley v. Little,* 272 S.E.2d 370, 373 (N.C. Ct. App. 1980) (quoting *In re Flying W. Airways, Inc.,* 341 F. Supp. 26, 72 (E.D. Pa. 1972)).

Examples of writings held to be sufficient to meet the statute are purchase orders,[3] bills of

---

[2] Some of the cases discussed in *Howard,* and others cited elsewhere in this opinion, involve contracts between "merchants," which are subject to a related subsection of the code, in Wisconsin, § 402.201(2), STATS. That section eliminates the requirement that the writing be signed by the party against whom the agreement is asserted, requiring only that the purported oral agreement be evidenced by "a writing in confirmation of the contract." Interpretations of § 402.201(2) "are necessarily a source of relevant case law" on § 402.201(1), "because the confirmatory memo under [subsection] (2) must satisfy [subsection] (1)." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 2-4, at 84-85 (3d ed. 1988) (hereinafter WHITE & SUMMERS).

[3] *Thomaier v. Hoffman Chevrolet, Inc.,* 410 N.Y.S.2d 645, 648 (N.Y. App. Div. 1978); *United States Steel Corp. v. Sigmund Sommer Constr. Co.,* 356 N.Y.S.2d 82, 83 (N.Y. App. Div. 1974) (sales confirmation signed by both parties and purchase order prepared on purchaser's own printed form held to be a binding agreement), *aff'd,* 334 N.E.2d 595 (N.Y. 1975).

sale,[4]invoices,[5] and sales orders,[6] which, by their terms indicate that, as the code requires, "a definite contract for the sale of goods has been made." *Oakley*, 272 S.E.2d at 373. Writings held to be *in*sufficient under the statute include documents such as a "price worksheet" lacking any indication that it was evidence of an existing, as opposed to a possible future contract[7] and a "price quotation" evidencing an agreement that was to be concluded at a future date.[8]

---

[4] *Peoria Harbor Marina v. McGlasson*, 434 N.E.2d 786, 791 (Ill. App. Ct. 1982) (bill of sale describing boat, containing terms relating to storage and slip rental, and dated and signed by both parties, held to be sufficient to comply with the statute).

[5] *Morrison v. Devore Trucking, Inc.*, 428 N.E.2d 438, 440 (Ohio Ct. App. 1980) (signed invoice for truck containing the price, a description of the item and a power train guarantee held to be sufficient).

[6] *Julian C. Cohen Salvage Corp. v. Eastern Elec. Sales Co.*, 206 A.2d 331, 334 (Pa. Super. Ct. 1965) (sales order containing the notation "SOLD TO: Eastern Electric," the date, the name of the shipper, the quantity, weight and description of the goods, and the notation "Your Order Number," held to be sufficient).

[7] *Martco, Inc. v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 928-29 (Tex. Ct. App. 1982).

[8] *Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir. 1986). We note in this regard that in *Southwest Eng'g Co. v. Martin Tractor Co.*, 473 P.2d 18, 22 (Kan. 1970), the Kansas Supreme Court held that a price list, without more, satisfied the "writing" requirement of the code. That decision, however, has been the subject of repeated criticism since its issuance as being "ill-advised both as a matter of policy and of statutory construction," Recent Case, 84 HARV. L. REV. 1737, 1739 (1971), and, generally, as a "case that may go too far." *Howard Constr. Co. v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 228 (Mo. Ct. App. 1983) (quoting WHITE & SUMMERS, § 2-4, at 85 n.27).

We believe the Inglett appraisal falls into the latter category. It is undisputed that the document was prepared in response to H.K.A.'s own request for an appraisal of the boat for a purpose unrelated to its sale to Northport. The document is entitled "Estimate" and, as indicated, contains detailed listings of the boat's components and equipment, together with a list of needed repairs and missing items; and it arrives at a value for the boat of $36,950.

The only item in the two-page document that gives any support to H.K.A.'s argument is the unexplained notation "PURCHASE PRICE $38,000.00" appearing on the second page. The notation is unaccompanied by any recitations sufficient to infer that "a binding or completed transaction has occurred," *Howard*, 669 S.W.2d at 227,[9] and we do not believe that that lone entry, considered in light of the document as a whole, is sufficient to satisfy the requirements of § 402.201(1), Stats. In the context of the Northport document, the words "PURCHASE PRICE $38,000.00," in and of themselves, do not allow the inference that a binding agreement was reached between the parties.

We conclude, therefore, that the trial court erred when it ruled that the Inglett appraisal met the requirements of § 402.201(1), Stats., and denied Northport's motion for judgment notwithstanding the verdict.[10]

---

[9] The *Howard* court suggested that words such as " 'as per our agreement,' 'in confirmation of,' or 'sold to buyer,' would indicate that the parties had reached an agreement." *Howard*, 669 S.W.2d at 228.

[10] H.K.A. also argues that the letter written by its secretary-treasurer to Northport in August 1990 "reconfirm[ing]" the agreement to sell the boat to Northport for $38,000 validates

*By the Court.*—Judgment reversed.

the sales contract under § 402.201(2), STATS. As we have indicated, unlike § 402.201(1), which requires that the writing be signed by the party sought to be bound to the oral contract, § 402.201(2) provides that an oral contract "[b]etween merchants" is enforceable "if within a reasonable time a writing in confirmation of the contract" is sent to, and received by, the party sought to be bound and that party fails to give written notice of objection within ten days. H.K.A. contends that, because Northport did not respond to its August letter, the latter section validates the contract.

However, H.K.A. did not raise the issue in the trial court, and we do not consider issues raised for the first time on appeal. *Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361, 365 (Ct. App. 1992). We note, too, that the parties' briefs indicate the existence of factual disputes as to whether the letter was ever received by Northport and, further, whether H.K.A. could be considered a "merchant" within the meaning of § 402.201(2), STATS. And *Evjen* holds that the waiver rule is even more strictly applied "where the issue involves questions of fact not brought to the attention of the [trial] court." *Evjen*, 171 Wis. 2d at 688, 492 N.W.2d at 365.