STAN'S LUMBER, INC., a Wisconsin Corporation, Plaintiff-Respondent,

v.

Gary P. FLEMING, d/b/a Gary P. Fleming Associates, Defendant-Appellant.

Court of Appeals

*No. 94–1258. Submitted on briefs April 18, 1995.—Decided August 30, 1995.*

(Also reported in 538 N.W.2d 849.)

556

557

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David Allan Rasmussen* of Walworth.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kim A. Howarth* of *Godfrey, Neshek, Worth & Leibsle, S.C.* of Elkhorn.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J.   Gary P. Fleming, d/b/a Gary P. Fleming Associates, appeals from a money judgment

in favor of Stan's Lumber, Inc. The judgment followed a trial at which a jury returned a favorable verdict to Stan's based on the law of account stated, unjust enrichment and implied or express contract.

On appeal, Fleming first argues that he was entitled to a directed verdict or "judgment after the verdict" on the account stated claim.[1] We hold that evidence supports the jury's award under the law of account stated. Therefore, we do not address the additional issues which Fleming raises concerning the awards for unjust enrichment and implied or express contract.

Fleming also argues that any agreement between the parties is unenforceable because it violated the statute of frauds. We hold that the agreement was exempt from the statute of frauds because Stan's fully performed under the agreement.

Fleming further argues that the trial court improperly awarded Stan's its actual reasonable attorney's fees. We hold that the court properly awarded the fees because Fleming promised to pay for such in his credit application which was accepted and relied upon by Stan's. We further hold that the fees were reasonable and necessary.

Last, Fleming argues that the trial court improperly awarded Stan's double costs pursuant to the offer of settlement statute, § 807.01, STATS. Because Stan's offer was ambiguous and did not clarify whether it included or exempted a portion of Stan's claim which had previously been reduced to judgment, we reverse the award of double costs.[2]

---

[1] Fleming does not identify which of the postverdict motions enumerated in § 805.14, STATS., qualify as a motion for "judgment after the verdict."

[2] Fleming's appeal on this issue is from a postjudgment order awarding double costs to Stan's. However, we observe

We affirm all other provisions of the judgment.

## FACTS

Stan's sells lumber and building supplies. During February 1990, Fleming inquired whether Stan's would provide building supplies for a home Fleming was intending to build on property owned by his wife in Illinois. Stan's provided Fleming with a credit application which Fleming completed. The credit application required the applicant to pay "attorney's fees, costs, or any other expense of collection." Stan's approved the application, and in June 1990, Stan's provided Fleming with a cost estimate of the materials.

In November 1990, Fleming began purchasing the materials from Stan's. These purchases continued into July 1991. Stan's made a total of forty-four deliveries to Fleming's building site. Stan's regularly billed Fleming for the materials. Fleming made the following payments against the account: $15,897.06 in December 1990; $7000 in April 1991; $17,000 in May 1991; $5000 in June 1991; and $5000 in July 1991, for a total of $49,897.06.

Fleming made no further payments after July 1991. At that time, his account balance was $33,200.99. Stan's continued to bill Fleming for this balance plus the accrued financing charges until April 1992. At that time, the balance was $35,880.84. When Stan's inquired of Fleming about payment, Fleming stated that one of his employees had embezzled money from him, and he asked Stan's to be patient with him regard-

that the previously entered judgment had already awarded double costs. Therefore, the appeal from the later order was unnecessary.

ing the account. However, Fleming made no further payments.

On May 1, 1992, Stan's commenced this action to recover the $35,880.84 balance plus its attorney's fees, costs and other expenses of collection. Stan's based these claims on Fleming's credit application which Stan's alleged represented an express contract. Alternatively, Stan's alleged a cause of action based on the law of account stated. Stan's later amended its complaint to add a cause of action based on unjust enrichment.

Fleming's initial answer admitted a balance due of $9722.26. Later, by amended answer, Fleming reduced this admission to $5785.06. Eventually, the trial court determined that the proper amount which Fleming admitted was $8790.73. The court then entered judgment in this admitted amount pursuant to § 806.03, STATS.[3]

Thereafter, on March 28, 1994, Stan's filed an offer of settlement in the amount of $30,000. Fleming did not accept the offer.

A jury trial was held, and the jury's special verdict found for Stan's based on implied or express contract, account stated and unjust enrichment. As to all three causes of action, the jury determined that the value of the materials which Stan's had furnished to Fleming was $80,460.35. Postverdict, the trial court denied

---

[3] Section 806.03, STATS., provides, in relevant part:

**Judgment on admitted claim; order to satisfy.** In an action on an express contract for the recovery of a liquidated sum of money only, if the answer admits any part of the plaintiff's claim . . ., the clerk, on motion of the plaintiff, shall render and enter judgment for the amount so admitted . . .. When the defendant admits part of the plaintiff's claim to be just, the court, on motion, may order the defendant to satisfy that part of the claim and may enforce the order as it enforces a judgment . . ..

Fleming's challenges to the jury awards. In addition, the court granted Stan's motions for its reasonable attorney's fees, costs and disbursements pursuant to the credit application. The court also awarded Stan's double the amount of its taxable costs pursuant to the offer of settlement statute, § 807.01(3), STATS. Fleming appeals.

## INTRODUCTORY STATEMENT

In order to put some of the appellate issues in their proper perspective, we make two preliminary observations about the procedure, verdict and judgment in this case.

First, while the jury fixed Stan's damages at $80,460.35 on all of its causes of action, we observe that this amount represented the *total value* of all the materials which Stan's delivered to Fleming. Because these awards did not factor in the amounts previously paid by Fleming, they far exceeded the account balance for which Stan's sued, $35,880.84. Therefore, the judgment in this case properly offset Fleming's prior payments against the jury's award. Thus, the net amount awarded to Stan's, exclusive of interest, attorney's fees, costs and disbursements, was $30,563.29.

Second, the jury's awards also did not factor in the $8790.73 judgment on admitted claim based on Fleming's prior admission. Unlike Fleming's prior payments, however, the final judgment did not offset this amount. Instead, the trial court's findings of fact and conclusions of law expressly state that the judgment shall include this amount. Thus, under the

present state of the record, Stan's has two enforceable judgments as to the $8790.73 portion of its total claim.[4]

## ANALYSIS

### 1. Account Stated

Stan's obtained a favorable verdict based upon the law of account stated. Fleming argues that the trial court should have directed a verdict in his favor at the close of the evidence or granted judgment in his favor after the verdict as to this claim. Fleming argues that the evidence is insufficient to support the verdict and, regardless, the evidence does not satisfy the legal standard for an account stated. As to the sufficiency of the evidence argument, our obligation is to search for any credible evidence that under any reasonable view supports the verdict. *See, e.g., Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 463, 473, 529 N.W.2d 594, 598 (1995). However, whether factual findings fulfill a particular legal standard presents a question of law which we review de novo. *Waage v. Borer*, 188 Wis. 2d 324, 328, 525 N.W.2d 96, 98 (Ct. App. 1994).

An account stated is an agreement between a debtor and creditor that the items of a transaction between them are correctly stated in a statement rendered, that the balance shown is owed by one party to the other and that the party has promised to pay that balance to the other. *Onalaska Elec. Heating, Inc. v. Schaller*, 94 Wis. 2d 493, 499, 288 N.W.2d 829, 832 (1980); *see also R.H. Stearns Co. v. United States*, 291 U.S. 54, 65 (1934). The promise to pay the balance may

---

[4] Fleming raises no appellate issue regarding this state of affairs.

be express or implied from the conduct of the parties. *Lepp v. Tamer*, 1 Wis. 2d 193, 199, 83 N.W.2d 664, 668 (1957).

In an action on an account stated, the retention of a statement of an account by a party without making an objection within a reasonable time is evidence of acquiescence in or assent to the correctness of the account. *Onalaska*, 94 Wis. 2d at 502-03, 288 N.W.2d at 834; RESTATEMENT (SECOND) OF CONTRACTS § 282 (1979). An implied agreement to pay may be presumed from such retention. *See Wussow v. Badger State Bank*, 204 Wis. 467, 476, 236 N.W. 687, 688 (1931). Furthermore, an account stated may arise where a debtor makes partial payment on an account or accompanies partial payment with an agreement to pay the balance. *Lepp*, 1 Wis. 2d at 199, 83 N.W.2d at 668.

We conclude that the evidence in this case demonstrates a classic account stated scenario. Stan's and Fleming initially struck an admittedly vague open account agreement by which Stan's agreed to deliver to Fleming an unspecified amount of building materials on Fleming's demand. However, as the parties' transaction progressed, the vagueness of the initial agreement was clarified by Fleming's orders for specific materials and Stan's delivery of the same, documented by its corresponding invoices and billings. In response to these billings, Fleming made periodic payments and otherwise offered assurances to Stan's that the balance would be paid once Fleming's financial difficulties with his employee had been resolved.

We appreciate that Fleming testified that he objected to the second billing statement. However, this testimony was directly refuted by Stanley Torstenson,

the owner and president of Stan's. Torstenson testified that Fleming never expressed an objection to Stan's billings nor to the materials or services which Stan's provided. This conflict presented a credibility issue for the jury to resolve. Again, we must look for evidence that supports the jury's verdict. *See Nieuwendorp,* 191 Wis. 2d at 473, 529 N.W.2d at 598.

The jury's adoption of Torstenson's testimony is supported by his testimony that Fleming told Stan's that he was not paying because his employee had embezzled money and Fleming was waiting for the matter to be settled with the law enforcement authorities. This evidence seriously impeached Fleming's testimony that he objected to Stan's billing.

The evidence which the jury was entitled to believe established the following: (1) Stan's and Fleming formed an initial agreement for an "open account," (2) Fleming ordered materials on the account, (3) Stan's delivered the materials, (4) Stan's billed for the materials, and (5) Fleming made payments on the account without objection. This evidence afforded a solid basis for the jury's answer that an account stated existed between Stan's and Fleming.

Fleming contends, however, that an account stated cannot exist in this case because there is no evidence of a dispute in the billing followed by the parties reaching an agreement to resolve the dispute.[5] He bases this argument on certain language in *Onalaska* and other account stated cases which speak of "an adjustment of accounts between the parties" or "the striking of a balance." *See Onalaska,* 94 Wis. 2d at 502, 288 N.W.2d at 833. However, *Onalaska* employed such language because the facts of that case presented evidence of a

---

[5] Fleming's argument on this point is inconsistent with his testimony that he had objected to the billing.

subsequent adjustment to the account between the parties following a dispute. *See id.* at 502, 288 N.W.2d at 833- 34. But nowhere did the *Onalaska* court say that such further facts were essential to an account stated claim.

This is confirmed by the *Onalaska* language describing the black letter law of an account stated:

> [I]f one party holds an account against another, and a statement of the account is made showing the amount due, and the statement is admitted by the other party to be correct, and there is a promise, either actual or implied, to pay the same, it amounts to an account stated.

*Id.* at 501-02, 288 N.W.2d at 833. This language makes no reference to a dispute between the parties as to the balance and a subsequent compromise of the balance dispute. The law of account stated as recited in the RESTATEMENT (SECOND) OF CONTRACTS § 282(1) is in accord:

> An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

Thus, the essence of an account stated claim is not the presence of a dispute between the parties as to a stated balance, but rather the failure of the debtor to object to the account, *disputed or not,* within a reasonable time.

Fleming also contends that Stan's account stated claim fails because it is based on the parties' original

agreement, whereas the law of account stated envisions a new agreement. While we agree that an account stated envisions a further agreement between the parties, we disagree with Fleming that Stan's account stated claim in this case was premised on the parties' original agreement. Stan's complaint clearly alleged, in the alternative, a cause of action for account stated. And, as we have noted, the evidence demonstrates a progression of events after the initial agreement by which Fleming impliedly promised to pay the billings which Stan's provided.

All claims for account stated are necessarily constructed upon a prior transaction between the parties. Indeed, the comment to the RESTATEMENT (SECOND) OF CONTRACTS § 282 observes that "[a]n account stated must be founded on previous transactions that have given rise to the relation of debtor and creditor and is usually based on a number of items." *Id.* cmt. a. Thus, the mere fact that the evidence in this case referred to the previous transaction does not serve to undo Stan's account stated claim. To the contrary, Stan's was required to prove the prior transaction as a predicate for its account stated claim.

The theory of account stated is that a debtor has admitted a debt and promised to pay it. *Wussow*, 204 Wis. at 476, 236 N.W. at 688; *see Lepp*, 1 Wis. 2d at 199, 83 N.W.2d at 668. The evidence supports the jury's award to Stan's under the law of account stated. Fleming was not entitled to a directed verdict or to a postverdict judgment dismissing Stan's complaint.

## 2. *Statute of Frauds*

Fleming claims that any agreement between the parties violated the statute of frauds, § 402.201, STATS. To address this argument, we are required to apply the facts of this case to a legal standard, presenting a question of law which we review independently. *First Bank v. H.K.A. Enters.*, 183 Wis. 2d 418, 423, 515 N.W.2d 343, 345 (Ct. App. 1994).

Section 402.201, STATS., requires a contract for the sale of goods for $500 or more to be evidenced by a written document. However, a party may be estopped from asserting the statute of frauds by his or her conduct. *See Toulon v. Nagle,* 67 Wis. 2d 233, 248-49, 226 N.W.2d 480, 488-89 (1975). The doctrine of part performance allows a court in equity to enforce a contract that does not comply with the statute of frauds if the party seeking enforcement has rendered partial performance of the contract. *See id.; see also Wamser v. Bamberger*, 101 Wis. 2d 637, 642 n.6, 305 N.W.2d 158, 160 (Ct. App. 1981).

Here, there was no written document detailing the supplies that Fleming agreed to purchase.[6] Rather, the orders were orally placed by Fleming or others on his behalf. In response, Stan's delivered the materials ordered, and the evidence fully supports the jury's finding to that effect.[7] Thus, Stan's has performed fully

---

[6] We assume for the sake of argument that the credit application was not a contract which covered the parties' subsequent dealings.

[7] Fleming makes a brief and veiled argument that Stan's did not deliver all of the materials which it claimed. If Fleming

under the parties' agreement. *See Toulon*, 67 Wis. 2d at 248-49, 226 N.W.2d at 488-89. Because Fleming accepted the goods, he is estopped from asserting the statute of frauds as a defense. *See id.* [8]

### 3. Attorney's Fees

The trial court awarded Stan's $24,200 in attorney's fees and $4798.75 in disbursements pursuant to the provisions in the credit application. Attorney's fees are generally recoverable by a prevailing party when there is a statute or an enforceable contract providing therefore. *See Elliott v. Donahue*, 169 Wis. 2d 310, 323, 485 N.W.2d 403, 408 (1992).

Fleming first argues that the credit application was not actionable because it represented nothing more than a request by him for credit. We agree that, at its inception, the application was not actionable. We extend that observation to the state of affairs after Stan's approved the application. At that time, Fleming retained the option to take his business elsewhere. Conversely, Stan's could not compel Fleming to place orders for materials.

Thus, the approved credit application represented, at most, an executory bilateral contract because "[a]ny

---

intended to make this an appellate issue, it is inadequately briefed. *See Vesely v. Security First Nat'l Bank*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 (Ct. App. 1985).

[8] In light of our holding that the law of part performance takes the parties' agreement out from the statute of frauds, we need not address Fleming's further claim that the trial court erred by exempting the agreement from the statute because Fleming was a "merchant" within the meaning of the statute of frauds. *See* § 402.201(2), STATS.

activity to which the parties might have been bound was in the future and remained to be done." *See First Wis. Nat'l Bank v. Oby,* 52 Wis. 2d 1, 7, 188 N.W.2d 454, 457 (1971). While a promise may constitute sufficient consideration for a return promise, it is not sufficient if the promisor's performance depends solely upon his or her option or discretion. *Id.* Therefore, before any obligation could arise pursuant to the parties' agreements, Fleming first had to order materials and Stan's had to deliver them. Subsequent events satisfied these conditions. Therefore, Stan's was entitled to pursue its attorney's fees and costs as promised by Fleming in the credit application.

Next, Fleming argues that the trial court misused its discretion by charging him with all of Stan's attorney's fees. Specifically, Fleming contends that the court should not have charged those attorney's fees incurred after an earlier trial was aborted following jury selection. The court dismissed the prior jury and granted Fleming a continuance because Stan's had belatedly delivered certain documents to Fleming.

An award of attorney's fees is committed to the trial court's sound discretion, which we will not disturb absent an erroneous exercise of that discretion. *See Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 204, 496 N.W.2d 57, 62 (1993). The trial court properly exercises its discretion when it applies the appropriate legal standard to the facts of record and, using a logical reasoning process, draws a conclusion that a reasonable judge could reach. *See id.*

When the earlier trial was aborted, the trial court noted that the mistake was an innocent one, attributable to Stan's personally, not its attorney. Indeed, the belated production of the materials caught Stan's

attorney, as well as Fleming, by surprise. As a result, some of Stan's attorney's work after the continuance was devoted to these materials.

Despite the fact that Stan's itself was at fault for causing the continuance, Fleming's argument that the trial court should have ignored all of Stan's subsequent attorney's fees is too simplistic. The premise of the court's ruling at the time of the adjournment was that the materials should have been earlier provided to Fleming. If that had been done, the effort which Stan's attorney expended in examining these materials would have occurred before the first trial rather than after. In short, this attorney work would have occurred under any scenario in which Stan's attorney properly prepared for trial.

Thus, this is not a case where Stan's conduct occasioned the need for further attorney effort which otherwise would not have been expended in a proper and thorough preparation for trial. Rather, this is a case where necessary and proper attorney work was expended later rather than sooner. Even though the trial court's decision did not specifically allude to this reasoning, we may independently review the record to determine whether additional reasons exist to support the court's exercise of discretion. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

Moreover, much of Stan's attorney's work after the continuance was not related to the belatedly produced materials, but rather was in response to further actions taken by Fleming. For instance, Fleming named additional experts; the parties engaged in additional discovery; and disputes arose regarding the admission of certain evidence and whether Stan's attorney could gain access to Fleming's building site. Some of these

disputes produced additional pretrial proceedings. At the postverdict hearing on attorney's fees, Stan's attorney testified that much of the billing was for time spent on these matters. He also testified that the issues in this case were different and more complex than in a standard collection case.

Based on our review of the entire record, we conclude that the trial court did not erroneously exercise its discretion in awarding attorney's fees to Stan's.[9]

### 4. Offer of Settlement

Last, Fleming maintains that the trial court improperly awarded double costs pursuant to the offer of settlement statute, § 807.01, STATS. Fleming contends that the offer was ambiguous in light of his previous admission to a portion of Stan's claim and the court's pretrial order entering judgment on the admitted claim in the amount of $8790.73 pursuant to § 806.03, STATS.

---

[9] Stan's also appears to mount an argument that the trial court erred by deciding the matter of Stan's attorney's fees postverdict. Stan's seems to contend that the matter should have been submitted to the jury. However, this argument (assuming it is made) is not developed. We hold that the issue is inadequately briefed. See Vesely, 128 Wis. 2d at 255 n.5, 381 N.W.2d at 598.

We observe, however, that where a statute authorizes reasonable attorney's fees, such determination is properly performed by the trial court after the jury has returned a verdict favorable to the claimant. See Hartlaub v. Coachmen Indus., 143 Wis. 2d 791, 804, 422 N.W.2d 869, 874 (Ct. App. 1988). We see no reason why the procedure should be any different where the fees are authorized by the parties' agreement rather than by a statute.

To address Fleming's contention, we must again apply the facts to the statute. This presents a question of law which we independently review. *See First Bank*, 183 Wis. 2d at 423, 515 N.W.2d at 345.

Stan's offer of settlement was made pursuant to § 807.01(3), STATS. Generally, this statute provides that if the plaintiff recovers a judgment more favorable than a properly made offer of settlement, the plaintiff is entitled to recover double costs. Stan's contends that it is entitled to double costs because the amount of the judgment exceeds its offer of settlement.

This time it is Stan's argument which is too simplistic. Stan's overlooks the manner in which this case was tried and the procedural history regarding the judgment on admitted claim. Stan's sued for damages in the amount of $35,880.84. In response to Stan's complaint, Fleming interposed an answer admitting a portion of the claim, and the trial court entered judgment on the admitted claim in the amount of $8790.73. This functionally reduced Stan's claim against Fleming to $27,090.11. Against this backdrop, Stan's then interposed its offer of settlement in the amount of $30,000.

The jury's damage award, however, was not premised on the balance due Stan's. Instead, the jury's damage award reflected the value of *all* the materials which Stan's had delivered to Fleming. This award did not credit the $49,897.06 in payments which Fleming had previously paid on the account and which Stan's complaint acknowledged. Nor did the award credit the portion of Stan's claim which Fleming had admitted and which had already been reduced to judgment.

Therefore, the true amount of Stan's recovery was $21,772.56—the total value of the materials supplied

($80,460.35) less the amount of the prior payments ($49,897.06) less the amount already reduced to judgment ($8790.73). Thus, Stan's net recovery was less than the amount of its offer of settlement. As such, Stan's was not entitled to recover double costs pursuant to § 807.01(3), STATS.

We also observe that it is the obligation of the party making the offer of settlement to do so in clear and unambiguous terms. *See Stahl v. Sentry Ins.*, 180 Wis. 2d 299, 308, 509 N.W.2d 320, 323 (Ct. App. 1993). Any ambiguity in the offer of settlement is construed against the drafter. *Id.* The terms of the offer must allow the offeree an opportunity to reasonably evaluate his or her exposure. *See Testa v. Farmers Ins. Exch.*, 164 Wis. 2d 296, 301, 474 N.W.2d 776, 778 (Ct. App. 1991); *Cue v. Carthage College*, 179 Wis. 2d 175, 179-80, 507 N.W.2d 109, 111 (Ct. App. 1993).

In this case, the offer of settlement "offers to settle the above entitled action for the sum of Thirty Thousand and NO/100 Dollars ($30,000.00), without costs." While these words are clear enough on their face, they become ambiguous in light of the partial judgment already entered against Fleming on the admitted claim. The obvious question facing Fleming was whether Stan's was offering to settle the amount remaining at issue after the judgment on the admitted claim or whether Stan's was offering to settle the entire claim, including the amount for which it had already obtained judgment.

In light of this history, we cannot say that Fleming was reasonably able to assess his exposure under the offer. We reverse the double costs awarded in the judgment. We affirm all other provisions of the judgment.

No costs to either party.

*By the Court.*—Judgment affirmed in part and reversed in part.